American Radiator Company, Complainant and Defendant in Error, v. Mary L. Walker et al., Defendants.

Avery Brundage et al., Complainants and Defendants in Error, v. Mary L. Walker et al., Defendants.

Chicago Title and Trust Company, Complainant and Defendant in Error, v. Mary L. Walker et al., Defendants.

Mary L. Walker, Cross Complainant, v. Chicago Title and Trust Company et al., Defendants. Mary L. Walker, Plaintiff in Error.

Gen. No. 8,315.

Opinion filed July 6, 1934.

FREDERICK MAINS, for plaintiff in error.

E. R. ELLIOTT, for coplaintiff in error Catherine Schultz.

JOHN H. SAVAGE and JAMES G. HOLBROOK, for defendants in error American Radiator Company and American Mosaic and Terrazzo Company.

FRANK J. WISE, MCNAB, HOLMES & LONG, KELLY, PRATT & ZEISS, THOMAS W. BRAMHALL and SANDERS, CHILDS, BOBB & WESCOTT, for certain other defendants in error; THORNTON M. PRATT, FRANK J. WISE and ALBERT S. LONG, of counsel.

WEST & ECKHART, for certain other defendants in error.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

The plaintiff in error, Mary L. Walker, is a resident of the City of Joliet, Illinois. She owns a lot in said city on which she decided to erect an apartment hotel at an estimated cost of $450,000. An architect from Chicago drew plans for the building, which were finally accepted by Mrs. Walker. Mrs. Walker advertised for bids for the construction of the building. The contract was not let to a general contractor, but to different contractors, each to do his particular kind of work. The building was started in the early part of

the year 1922 and continued until November, 1922. At this time the different contractors refused to work any longer on the building, without receiving their pay. The building operations were at a standstill from November, 1922, to some time in the early spring of 1923. Mrs. Walker, in the meantime, was making a desperate effort to raise money to complete the building, but was having an exceedingly hard time to find one who was interested in the proposition. She came in contact with a representative of Powell, Garard & Company, brokers of the City of Chicago. They agreed to finance the building operation. Mrs. Walker made a written application to Powell, Garard & Company for a loan of $250,000. On the face of this application it appears that it was the ordinary application for making a loan. It is on the wording of this application that the plaintiff in error now bases her defense to this case, namely, that it was a loan of money, and therefore, ultra vires and void, because of the fact that Powell, Garard & Company, under their articles of incorporation, were not authorized to loan money, but could only buy and sell bonds and other securities.

After the agreement to finance Mrs. Walker, Powell, Garard & Company had the building and grounds appraised at Joliet. They had 450 bonds printed which complied with the Blue Sky Law, Cahill's St. ch. 32, ¶ 254 *et seq.* On the face of the bonds it shows they were issued as building bonds.

The application provided that Powell, Garard and Company were to furnish the money at the rate of seven per cent per annum, but, in addition thereto, they charged Mrs. Walker ten per cent of the amount as commission for furnishing the money. It is now claimed that this was a loan and, therefore, usurious. After the bonds were printed, Mrs. Walker signed all of them and Powell, Garard & Company advanced the money to complete the building. Some was out of

their own money and some from the sale of the bonds. All of the bonds were eventually sold to the public and the proceeds used in the construction of the hotel, with the exception of the 10 per cent, the brokers' fee which they retained as their own.

The American Radiator Company on March 19, 1924, filed its petition in the circuit court of Will county against Mary L. Walker and others to foreclose a mechanic's lien, on the premises therein described, situated at the northwest corner of Pine street and Western avenue in the City of Joliet. (Docket No. 31,651.) The Chester Johnson Electric Company, Hansell-Elcock Company, Sutton Plastering Company, Kaestner & Hecht Company, American Mosaic and Terrazzo Company, Victor and Martin Ahlvin, Johns-Manville, Incorporated, William M. Ryan, Charles W. Berger, and Joliet Sheet Metal Company all filed their respective intervening petitions praying for the establishment of liens against said premises.

Avery Brundage, Hubert Burnham and Daniel H. Burnham, Adam Groth and Company, and McClintic-Marshall Construction Company, on April 13, 1925, filed in said circuit court their bill of complaint against said Mary L. Walker as mortgagor, and others interested as lien claimants, and also others interested as second mortgage note holders, to foreclose a second trust deed, Document No. 353572, against said premises given to secure certain notes then held by complainants. An application for an injunction in said cause No. 32,385 was made and allowed without notice or bond. On April 18, 1925, the Joliet National Bank was appointed receiver of said property on application made by said complainants. Notice was given to said mortgagor but without a complainant's bond. The said cause is No. 32,385.

On July 8, 1926, the Chicago Title and Trust Company as trustee (Document No. 353571) exhibited its

bill of complaint against alleged unknown bond-holders thereunder, against said Mary L. Walker as mortgagor, and others interested as mechanic lien claimants and as second mortgage note holders, to fore-close said first trust deed as an incumbrance against said premises. On application of said complainant trustee, the Joliet National Bank was, on November 30, 1926, appointed receiver. On November 5, 1927, said defendant, Mary L. Walker, presented her motion for consolidation of said three causes and thereafter an order consolidating said causes was entered in each cause as of November 11, 1927.

The bill of the American Radiator Company alleges that on October 22, 1922, Charles H. Law, doing business as Charles H. Law Plumbing and Heating Company, one of the defendants herein, applied to the petitioner to furnish all material, equipment and for installing a heating system in the certain hotel building then in process of construction, which is alleged to be the property of Mary L. Walker; that a contract was entered into between the American Radiator Company and the said Charles H. Law by which the petitioner was to furnish all necessary material and equipment to be used in said building in said heating system, and that said Charles H. Law agreed to pay at market price, cash upon delivery of said material and equipment; that said petitioner did furnish said equipment and the same was used in the construction of the building on said premises and a true and correct account of the material and equipment was furnished Mary L. Walker and said Charles H. Law. The petition went on to state further in detail materials delivered under said contract and that there was now due and unpaid to the petitioners the sum of $2,602.48; that petitioner is entitled to a mechanic's lien on said premises for said amount.

The petitioner further states that Mary L. Walker on April 2, 1923, executed a certain trust deed for said

premises to the Chicago Title & Trust Company to secure the payment of certain notes and bonds in the aggregate sum of $250,000, which said deed is recorded in the recorder's office of Will county; that said Mary L. Walker, on April 2, 1923, executed a certain other trust deed conveying the same premises aforesaid to the Chicago Title & Trust Company to secure the payment of certain notes and bonds aggregating the sum of $75,000, which trust deed is also recorded in said county; that said petitioner has made due and diligent search and inquiry to ascertain the names of the legal holders of the notes and bonds aforesaid but has been unable to ascertain the same and the names of the owners and holders are unknown to it.

On June 3, 1924, Mary L. Walker filed her answer to said petition. She says she has no knowledge as to whether Charles H. Law applied to the petitioner to furnish material and equipment for installing a heating system in her hotel building upon her premises, but requires strict proof thereof. She admits ownership in fee simple of the premises. She denied that a true and correct account of such material and equipment was furnished to her. She said she does not know whether a true and correct account for such material and equipment was furnished Charles H. Law, but requires strict proof of this fact. She denied knowledge of whether the material and equipment furnished by the petitioner to Charles H. Law was ever used in installing and equipping a heating plant in said building; that the petitioner had ever furnished her a statement of the account; that she ever accepted any of the material and equipment furnished by the petitioner. She says she has no knowledge of any money owing to or due the petitioner from Charles H. Law. She denied that any notice was served upon her, or that the petitioner was entitled to a lien upon the premises. The answer admits that Mary L. Walker, on April 2, 1923, executed two trust deeds mentioned

in said petition. The Chicago Title & Trust Company was made a party defendant to the bill and filed its answer to the petition. By their answer they admitted and averred that they are interested in the real estate described in the petition under and by virtue of the trust deed of April 2, 1923, executed by Mary L. Walker to said Chicago Title & Trust Company for the real estate described in said bill to secure her indebtedness in the principal sum of $250,000 to be paid by her 440 bonds bearing even date therewith; that said defend-. ant had no information, knowledge or belief as to who were the owners or who are the owners of the bonds secured by said trust deed; that the said trust deed is a good, valid and subsisting lien on said real estate described in said trust deed and bill herein.

The American Mosaic and Terrazzo Company filed an intervening petition in said cause and allege that they are an Illinois corporation; that on June 19, 1922, Mary L. Walker was the owner of record of the aforesaid mentioned premises, and that she engaged D. H. Burnham and Company as architects and that on June 19, 1922, they entered into the written contract with Mary L. Walker, whereby they agreed to furnish the labor and materials for the terrazzo tile and mosaic work for the permanent hotel building to be erected on the premises of said Mary L. Walker; that the petitioner was to receive for the same the sum of $13,500 in instalments, as the work progressed; that they started work on said building, and on July 19, 1923, while the petitioner was working on the premises they submitted a proposition to said Mary L. Walker for additional labor and material for $4,200, for which Mary L. Walker accepted the said proposition; that they furnished additional labor and material in the construction of hotel building; that as the work progressed the said architects were to issue certificates to the petitioner which were to be paid by the defendant, Mary L. Walker; that Mary L. Walker made

default and has not paid the certificates nor any part thereof and by reason of her default, the petitioner had suspended work on the building; that nearly all of the work they were required to do under their contract had been completed. At the time of the default, Mary L. Walker was indebted to them in the sum of $7,985. They claimed a lien on said premises as provided in the Mechanics' Liens Law, Cahill's St. ch. 82, ¶ 1 *et seq.*

The defendant, Mary L. Walker, admitted that Burnham and Company were her architects, but neither admitted or denied that she had entered into a contract with the petitioner for the materials furnished, and demanded strict proof thereof. She neither admitted nor denied that the petitioner was to receive $13,500 for the original contract. She did admit that such petitioner had furnished and installed some cement work and did some tile setting and mosaic work, on the building erected upon the property, but she neither admitted nor denied that the petitioner had submitted its proposition for extra work and material at a price of $4,200, nor that she accepted the proposition, but demanded strict proof thereof. She neither admitted nor denied that the architect had issued certificates to the petitioner for $2,500 for the work done by them which had not been paid, but demanded strict proof thereof. She admitted that the petitioner had quit work on said building, but denied that she had suspended the work on the same or that she was indebted to the petitioner in the sum of $7,985.

The defendant charged that the work by the said petitioner was not well done or done in a workmanlike manner, and was not done according to the directions of the defendant, but that the petitioner failed and refused to perform the said work in a workmanlike manner. She denied that the petitioner was entitled to a mechanic's lien on said premises.

On June 28, 1923, Victor Ahlvin and Martin Ahlvin filed their intervening petition in said case and alleged that they were copartners engaged in the business of carpentry under the firm name of Ahlvin and Son; that on October 24, 1923, Mary L. Walker was the owner of the premises in question and gave a legal description thereof; that on said date the defendant had engaged Burnham and Company as architects for the plans and specifications for the construction of the hotel building above heretofore mentioned; that on October 27, 1923, the petitioner entered into a written contract with Mary L. Walker in which the claimants agreed to do all the necessary carpentry and labor. They describe their contract in particular, including necessary hardware, kitchen equipment, wardrobes, medicine cases and china cases. They were to furnish the labor necessary to distribute and hoist the material inside of said building and to furnish nails and other building materials.

The petitioner further alleges that by the terms of said contract said work must be completed within a reasonable time; that petitioner was to receive therefor the sum of $8,950 to be paid as the work progressed; that thereafter at the instance and request of Mary L. Walker, the petitioner performed extra labor and furnished extra material on the premises to the value of $652.50; that after the execution of the agreements the petitioners commenced to perform and continued the performance of the contract to furnish extra labor and materials by request for the sum of $652.50; that said petitioners have been paid the sum of $5,959.25 which has been applied on the contract price; that said Mary L. Walker failed and refused to make further payments on said contract and for the reason thereof the petitioner suspended work on said building; that nearly all work on said building had been completed; that petitioners are willing and ready to comply with

said contract and to perform the terms thereof; that the defendant, Mary L. Walker, is now indebted to the petitioner in the sum of $3,193.25 and they are entitled to a mechanic's lien against the said premises for the said amount.

Mary L. Walker filed on October 24, 1923, her answer to said petition and admitted that Burnham and Company were her architects; that she was the owner of the property in question; that she entered into a contract with the petitioners to supply the necessary carpentry labor, the interior trim, etc., and other material as set forth in petitioner's bill of complaint; that said work was to be completed within a reasonable time and the petitioners were to be paid for the same in the sum of $8,950 as the work progressed. She denied that she ever requested petitioner to perform any extra work or furnish any extra material, or that any extra material or labor was furnished.

She charges that the petitioners have wholly failed to comply with the contract; that a great part of the work performed by the petitioners was not performed in a workmanlike manner. She states it has not been accepted by her. She admits that the petitioner had ceased working on the building but denied that all of the necessary work had been completed, or that the petitioners were willing to complete their contract. The defendant further charged that the cost of completing the contract and the cost of doing that part of the work required by said contract, which was not done in a good and workmanlike manner, more than exceeded the amount claimed under the contract by the petitioners. She denied that she was indebted to the petitioners for any amount or that they were entitled to a lien on her premises.

On September 12, 1923, the Johns-Manville, Incorporated, were granted leave to file an intervening petition in said case and on said date it filed its petition

wherein it alleged that they were engaged in business of furnishing and selling material to use in the construction and equipment of buildings and dwellings; that on June 13, 1922, Charles W. Law, doing business as Charles W. Law Plumbing and Heating Company, applied to the petitioner to furnish all the materials and equipment and necessary labor for all installation of pipes, boilers, etc., in the defendant's hotel, then in process of construction on her premises; that a contract was entered into between the petitioner and Law in which the said petitioner agreed to furnish and install such materials and equipment for said building, the said material and equipment to be paid for by cash on delivery; that said petitioner did furnish and install in said building a large amount of such material and equipment; that a true and correct account of such material, equipment and labor was furnished Mary L. Walker by Charles Law; that all said materials, labor and equipment was used by said petitioner in said building; that the same was necessary to complete said building; that the price charged for each article or item is a fair and reasonable one, and that each article was of good quality; that said building was actually erected and materials furnished by the petitioner constituted a valuable and permanent improvement on said premises; that the said materials and equipment were accepted by said Mary L. Walker; that Charles H. Law on July 15, 1924, had completed the performance of his work under his contract; that there is now due and unpaid to the said petitioner $1,043.60; that the petitioner is entitled to a mechanic's lien on said premises for this amount.

The defendant neither admitted or denied the making of a contract for furnishing materials, etc., but demanded strict proof thereof. She charges that no notice as required by the Mechanics' Liens Law, Cahill's St. ch. 82, ¶ 1 *et seq.,* was ever served upon her

by the petitioner notifying her that the petitioner had furnished equipment and materials to Charles H. Law; that since the making of the contract Charles H. Law had gone into bankruptcy and that the petitioner was one of the claimants in said bankruptcy proceeding. She denied that she was either indebted to the petitioner in the sum of $1,043.60 or any other amount, or that the petitioner was entitled to a mechanic's lien.

On December 28, 1924, the circuit court at the November Term thereof, entered an order taking the original petition as confessed by the contractor, Charles H. Law, and by the unknown holders of the bonds described by the trust deed heretofore mentioned. The decree recites that a hearing was had, both oral and documentary proof being introduced; that the American Radiator Company was entitled to a mechanic's lien as set forth in their bill of complaint; that the claim of Johns-Manville, Incorporated, for mechanic's lien was by stipulation adjusted. It also found that Martin Ahlvin and Victor Ahlvin, copartners, had fully proven their claim and were entitled to a mechanic's lien for the amount of $2,916.52.

On January 30, 1925, an order was entered granting permission to George Poehner, A. C. Dillman, William M. Ryan and Charles W. Berger to file their intervening petitions. This was done and a rule entered against all parties to answer the same. The intervening petition of George Poehner and A. C. Dillman, copartners, as Poehner and Dillman, are not material to the issues involved in this case.

On January 30, 1925, Wm. M. Ryan filed his petition alleging that he was a contractor engaged in the business of roofing and sheet metal work; that Mary L. Walker was the owner of the premises involved in this suit; that on May 20, 1922, petitioner entered into a contract with the defendant, Mary L. Walker, whereby he agreed to furnish the roofing and sheet metal work

for the said hotel building then being erected on said premises; that he was to receive $5,200 in instalments from time to time for said work as the same progressed; that he entered into the performance of this contract and that sometime in the month of December, 1922, all the work on said building was suspended by the several contractors engaged in the erection of said building including the petitioner, on account of the failure of Mary L. Walker to perform her part; that said suspension continued until May, 1923, when an agreement was made between Mary L. Walker, her architects, and the petitioner, whereby the petitioner was to receive in addition to the contract price the further sum of $600 to cover the increased cost of labor and material occasioned by the failure of the said Mary L. Walker to perform her part of the contract; that several of the contractors were engaged in the erection of the building and that numerous delays were occasioned by Mary L. Walker in not carrying out her part of the contract with the several contractors; that the petitioner from time to time after May, 1923, continued in the performance of his contract as directed by the architects until the contract was fully completed; that on August 13, 1924, he gave proper notice to protect his rights under the Mechanics' Liens Law and that he is entitled to a lien on said premises for the sum of $1,650. The petitioner also set forth the making of two trust deeds from Mary L. Walker to the Chicago Title & Trust Company, alleging that his lien is superior to that of the trust deed.

The petitioner, Charles W. Berger, filed his bill representing that he entered into a contract to furnish temporary elevator service in connection with the construction of the building, and to install a transformer wall and do other work and furnish material in the erection of said building and that there is now due him on his contract for such labor and material the

sum of $2,731.40. Mary L. Walker filed her answer admitting ownership of the building, and that she employed the architect. She neither admitted nor denied the contract of said petitioner, but demanded strict proof of it. She denied there was $1,000 due on his contract, and charged that he failed to perform his work in a good and workmanlike manner and failed to complete the work as specified by the architects. She admitted that she executed two trust deeds on April 2, 1923.

On March 10, 1925, the Thomas Pump Company was given leave to file an intervening petition in said case. The same was filed on the same date. The petitioner alleges that it was engaged in the business of installing motor-driven, deep well pumps; that it entered into contract with Mary L. Walker, on April 1, 1923, to install certain pumping apparatus, pipes, etc., on the premises of the defendant for the sum of $1,225; that they furnished the same and did not receive pay therefor; that proper notices were given and they are entitled to a mechanic's lien on said premises for that amount.

On May 2, 1925, a petition was filed in said court in said case by Avery Brundage, D. H. Burnham and Company, Adam Groth and Company, McClintic-Marshall Construction Company, the Kelly and Jones Company, Chester Johnson Electric Company, and the Hansell-Elcock Company, praying for an order to set aside the default entered on December 8, 1924, as to the unknown owners of the notes described in the second trust deed of April 2, 1923, and asking permission to answer said petition of the said American Radiator Company and that they be made parties defendant to the said proceeding. On the same date an order was entered vacating said default of December 8, 1924, and said petitioners were granted leave to answer the petition of the American Radiator Company.

The answer of these defendants set forth that they were made parties defendant as unknown owners and holders of the notes described by the trust deed from Mary L. Walker to the Chicago Title & Trust Company, as trustee, bearing date of April 22, 1923, which is commonly known as the second deed of trust. Each of them asked that they be made parties defendant by his true and correct name. They averred that they were interested in said real estate described in said bill as holder of notes secured by the said deed of trust. The amounts and number of the notes were set forth in detail in the petition. The answer set forth specifically the claims of the respective parties in interest on their respective notes. They claimed by virtue of said trust deed, a valid and subsisting lien on said real estate mentioned in the said trust deed for the full amount of their respective claims as evidenced by said notes and claimed the same was superior to the mechanic's lien claims against the real estate.

On October 14, 1925, an order was entered granting the Joliet Sheet Metal Company leave to intervene in said case. It filed its petition alleging that they were engaged in selling and installing sheet metal and sheet metal equipment; that on March 1, 1922, Mary L. Walker was the owner of the premises in question; that they entered into a contract with Charles H. Law who was doing business as Charles H. Law Plumbing and Heating Company, to furnish labor and material for installing and constructing heating and ventilating ducts, etc., in the hotel building of the defendant, Mary L. Walker; that they furnished said work and did the same in a good and workmanlike manner; that they were to receive the sum of $2,252; that later they entered into a special contract whereby they were to do additional work, which they did at an extra cost; that part of the contract price has been paid, but there is now due and unpaid the sum of $929.88 and that they

are entitled to a mechanic's lien on the premises for the same.

On October 13, 1925, Avery Brundage, D. H. Burnham, Adam Groth & Company and McClintic-Marshall Construction Company filed their bill in said court, said case being numbered 32,385. They set forth in their bill that on April 2, 1923, Mary L. Walker was indebted to the Avery Brundage Company, to the amount of $21,309; to the D. H. Burnham Company in the sum of $4,985.40; to the Adam Groth Company in the sum of $1,844.55; and to the Morava Construction Company in the sum of $10,357.95. Each of the complainants alleged that Mary L. Walker being so indebted to the complainants made and delivered to Powell, Garard & Company of Chicago, for the use and benefit of the various complainants, her promissory note of April 2, 1923, in which she promised to pay to the order of herself certain sums of money with interest at seven per cent per annum payable semiannually on the 2nd day of April and the 2nd day of October of each year. The bill alleges that these notes were properly indorsed by Mary L. Walker and delivered to Powell, Garard & Company; that Powell, Garard & Company delivered to each of the complainants the notes that were due them according to said contract; that they were now the owner and holders of their respective notes. The bill alleges that prior to April 2, 1923, the said Mary L. Walker had commenced the construction of said apartment hotel building upon the real estate of the said Mary L. Walker and that she had engaged D. H. Burnham & Company as architects, and had entered into a contract with the said Avery Brundage, Adam Groth & Company, and the said Morava Construction Company, to furnish certain materials and labor in the construction of said building; that several months prior thereto work had been suspended by the several contractors then en-

gaged in the construction of said hotel building, occasioned by the default of the said Mary L. Walker in carrying out the said contracts on her part, including the contracts of the complainants and other contractors at that time engaged in the construction of the said building; that they had entered into an agreement with Mary L. Walker to accept 30 per cent of the amount of their respective contract in notes secured by a deed of trust conveying said real estate to the Chicago Title & Trust Company as trustees, subject, however, to a lien of a prior trust deed given to secure a bond issue loan of $250,000; that pursuant to said agreement the said note and trust deed were prepared by Mary L. Walker, and by her executed and delivered to Powell, Garard & Company, to hold for the use and benefit of the several contractors, the notes to be delivered to the complainants and other contractors upon written certificates to be issued by the said architects. The bill then alleges that in pursuance of said agreement Mary L. Walker executed and delivered to Powell, Garard & Company 135 notes, each bearing date of April 2, 1923. The notes are then described and then their number and their amount.

It is further alleged that Mary L. Walker executed, acknowledged and delivered her trust deed to secure the payment of said note, both principal and interest, and conveyed the same to the Chicago Title & Trust Company as trustee. The bill describes the property as being the same as described in the petition of the American Radiator Company in case No. 31,651 which the said trust deed was duly acknowledged and recorded in Will county, Illinois; that Powell, Garard & Company in pursuance of said agreement had delivered pursuant to certificates issued by the architect the following notes described by the trust deed: to Avery Brundage, notes Nos. 1 to 12, inclusive, each for $1,420.60; to D. H. Burnham & Company, Nos. 1

to 10, inclusive, each for $332.36; to Adam Groth & Company, notes Nos. 1 to 15, each for $122.97, and to said Morava Construction Company, notes Nos. 1 to 15, each for $690.53; that said Powell, Garard & Company still retained and held notes Nos. 13, 14, and 15, for $1,420.60 each, the property of said Avery Brundage, and the notes Nos. 11, 12, 13, 14 and 15 for $332.36 each, the property of D. H. Burnham & Company, and that they had refused to deliver the same to complainants, Avery Brundage and D. H. Burnham & Company, although authorized so to do by certificates issued by said architects; that Powell, Garard & Company had delivered other of said notes to other contractors on certificates issued by said architects, and that some of said notes were now in possession of said contractors; that such of said owners as were known to complainants were made defendant to this bill by their own proper names and such as were unknown were made parties defendant as ''unknown owners or holders of said notes.'' The bill alleges that Mary L. Walker had paid some of the notes to other contractors other than the complainants and it alleges that Powell, Garard & Company had delivered to the Sutton Plastering Company two of said notes for $1,188.90 on certificates issued by the architect and had in their possession two other notes for $1,188.90, the property of the said Sutton Plastering Company, which they refused to deliver to them although they had been authorized to do so by certificates issued by the architects. It is further alleged that Powell, Garard & Company had in its possession 15 notes for $242.81 each, the property of Hansell-Elcock, which they refused to deliver to said company although they had been authorized to do so by certificates issued by the architects.

The bill alleged that said real estate, together with all right, estate, title, and interest of the said Mary L. Walker had been conveyed to said trustee for the pur-

pose and use of the trust aforesaid and for the equal security of said principal notes, free from all rights and benefits under the Homestead Exemption Laws of the State of Illinois, Cahill's St. ch. 52, ¶¶ 1–12, which said rights and benefits of the said Mary L. Walker were, by said trust deed, expressly released and waived. The bill then alleges the terms and provisions of the trust deed as to nonpayment of either principal or interest, or the nonpayment of taxes, assessments and insurance on said premises, and in case of attaching by any lien of mechanics or materialmen or breach of any of the covenants or agreements therein contained to be performed by said Mary L. Walker, then the whole principal sum, secured by said trust deed shall at once, at the option of the holder and owners of said notes or any one of them, became immediately due and payable without notice to Mary L. Walker and thereupon the said trust deed may be foreclosed, and upon the filing of any bill for that purpose, the Chicago Title & Trust Company may at any time thereafter without notice to said Mary L. Walker or any party claiming under her, and without regard to the solvency or insolvency of said Mary L. Walker and without regard to the then value of the said premises or whether the same be occupied by Mary L. Walker as a homestead, appoint a receiver, for the benefit of complainant or any of the owners or holders of said notes, secured by said trust deed, with full power to collect the rents, issues and profits of said premises during the pendency of said foreclosure suit, and in case of sale and a deficiency, during the full 15 months' statutory period of redemption.

The bill then alleges that a number of said notes were past due and unpaid and that Mary L. Walker was now in default on the same; and that by reason thereof the said property had become forfeited, subject to redemption, etc.; that several persons, firms, and cor-

porations have filed in said circuit court petitions and intervening petitions to foreclose mechanics' liens on said property and that such parties were made parties defendant; that said lien suit was still pending in said circuit court, and the aggregate amount sought to be foreclosed was in excess of $18,000, and that said other persons, firms and corporations, including some of complainants, were about to file in said suit intervening petitions to collect various amounts due them from said defendant, Mary L. Walker, and that such additional claims approximate $10,000; that by reason of default of payment of principal and interest on their notes, complainants have elected, pursuant to said trust deed, to declare the whole principal sums due and payable and that there is also due and payable to complainant a reasonable solicitor's fee and cost, to be determined by said court. The bill then alleges *that their said trust deed was subject to a prior trust deed given to secure a bond issue loan of $250,000* and that said premises were meager and scant security for the sum due to complainants.

The bill alleges Mary L. Walker is insolvent, and that a receiver should be appointed without notice to her, to collect the rents, issues and profits during the pendency of said suit; that said real estate is improved with a nine-story apartment hotel building, and that a large income can be derived therefrom if properly managed; that said Mary L. Walker is attempting to manage same and rent the apartments in said building, but is wholly unfit so to do; that if a receiver is appointed the lien of the complainants can be protected and paid and that if said receiver is not appointed at once without notice to said Mary L. Walker, they are in great danger of losing the amount of their respective claims.

The bill alleges that said Powell, Garard & Company had in their possession certain notes executed by Mary

L. Walker and secured by said deed of trust; that said Mary L. Walker had demanded that said notes be turned over to her; and that said complainants fear that unless said Powell, Garard & Company are restrained by injunction issued out of said court, restraining them from disposing of or surrendering the same, the rights of the complainants and defendants legally entitled to said notes will be unduly prejudiced and they will be in great danger of losing the amounts of their respective claims evidenced by said notes.

On April 14, 1925, an injunction was issued, directed to Powell, Garard & Company, restraining them from disposing of or surrendering the possession of the notes described in the bill. On April 22, 1925, a notice of the same was duly served on Mary L. Walker. On April 18, 1925, an order was entered appointing the Joliet National Bank as receiver of said hotel property upon its filing its written acceptance of said appointment. Complainants were not required to give a complainant's bond. On the same date an order was entered enjoining and restraining Mary L. Walker from collecting the rents for said premises and from interfering in any manner with said property. Mrs. Walker was allowed to retain possession of the apartment in said building which she then occupied until further order of the court. The receiver filed an acceptance of said appointment on April 18, 1925.

On June 26, 1925, the said receiver filed a petition in said case representing that it was for the best interests for all concerned that said receiver be authorized by order of the court and with the consent of all the parties in interest, to finish, repair and redecorate said building at the estimated cost of $25,000 and complete the furnishing of the apartments not then in use at a designated cost of $20,000; that for such purpose the receiver be authorized to negotiate a loan through the issuance of receivers' certificates. It also represented that Mary L. Walker had assumed a hostile

and antagonistic attitude towards the managers employed by said receiver and interfered with the receiver's management of said hotel and it was for the best interest of all parties concerned including said Mary L. Walker, that she be compelled by an order of court to forthwith surrender the possession of the apartment she then occupied. Said receiver prayed that it be authorized to borrow funds on said receivers' certificates, and make said repairs and improvements, and that an order be entered requiring said defendant, Mary L. Walker, to forthwith vacate the apartment which she occupied in said hotel building.

On the same date an order was entered granting the prayer of the petition and ordering Mary L. Walker to surrender possession of the apartment occupied by her in said hotel building; that she should not inter-fere in any manner with the receiver or with any of the agents or employees in the management of the apartment hotel; that after July 1, 1925, she was to remain out of said building. The receiver was authorized and directed to borrow under receivers' certificates a sum not to exceed $50,000 which certificates were to be a prior and first lien as against all parties to this suit. All the parties consented thereto. The said lien was to be against the real estate with the improvements thereon for the purpose mentioned in said petition. The said receiver was ordered to pay Mary L. Walker the sum of $200 for the use of the hotel furniture and equipment belonging to her. The order further provided that any right of homestead of Mary L. Walker in said property should not be lost or surrendered by reason of her vacating said apartment building as theretofore ordered and directed by the court.

Mary L. Walker filed a petition to remove the receiver. The cause was heard on December 14, 1925, at which time the petition was dismissed without prejudice. On September 9, 1925, Mary L. Walker filed

her answer to said bill and by leave of court on November 11, 1927, the same was amended. In substance it is as follows:

The said Powell, Garard & Company was organized as a corporation under the General Corporation Act of Illinois, on, to wit: August 18, 1919, with its principal office in the City of Chicago; that the certificate of incorporation of said Powell, Garard & Company was issued by the Secretary of State on August 18, 1919, and filed for record in the office of the recorder of Cook county, August 19, 1919, and duly recorded; that the objects of said corporation are in said certificate of incorporation set forth as follows, to wit:

"The object for which it is formed is to buy, sell, acquire, take over, own, hold, transfer, lease, pledge, mortgage, encumber, convey, dispose of and deal in Federal, State, County and Municipal bonds, public service corporation bonds and stocks, industrial bonds and stocks, stocks and bonds of other corporations, real estate bonds, special assessment warrants, farm mortgages, real estate loans, and other securities as principal, and not as agent; and to take, accept, hold or deposit for safekeeping, any and all bonds, stocks or other securities, or personal property whatsoever, which any person or corporation may deliver or entrust to it; to invest its capital stock and surplus earnings in the purchase of income producing properties to be selected by its directors, subject to all conditions and provisions of the laws, of the State of Illinois, governing corporations. This corporation shall not exercise any of the functions of 'an agency and loan corporation,' as defined in the General Corporation Act."

That said Powell, Garard & Company afterwards on January 16 and 17, 1924, changed its name to Garard & Company as appears by the certificate of change of name issued by said Secretary of State, etc.; that

said Garard & Company on June 22, 1926, again changed its name to Garard Trust Company and changed its objects as appears by the certificate of change of name, etc., issued on the date last aforesaid, and filed for record in the office of the recorder of Cook county on June 24, 1926, wherein the objects of said Garard Trust Company are set forth as follows, to wit:

"To accept and execute trusts, to carry on a general trust company business in all of its branches, and to buy, sell, and otherwise deal in stocks, bonds, notes, mortgages and other securities."

The defendant by her amendment further answering said that Powell, Garard & Company, on March 13, 1923, in the City of Chicago was then and there engaged in the business of loaning money, and in real estate brokerage, and particularly in making loans for the construction of buildings for the improvement of real estate and negotiating the transfers of real estate by trust deed to secure such loans; that said Powell, Garard & Company then and there procured from the defendant, Mary L. Walker, an application for the loan of its funds in the sum of $250,000, to be secured by a first mortgage trust deed conveying to the Chicago Title & Trust Company as trustee, the premises described in said bill; said loan was for the construction of said apartment hotel on the premises in said bill of complaint mentioned and described; that said application for said first mortgage loan was then and there accepted by said Powell, Garard & Company; that said Powell, Garard & Company then and there entered into a written contract with said defendant, Mary L. Walker; that a true, correct and complete copy of said contract is attached to the amendments to the answer of said defendant in the case of *Chicago Title & Trust Company v. Mary L. Walker and others,* case No. 33,256, which said copy, on file in said cause, is by reference thereto, made a part of said answer;

that said bonds and trust deed of April 2, 1923, sought to be foreclosed in said cause No. 33,256 were made, executed and delivered by said defendant to said Powell, Garard & Company, pursuant to and in consummation of said building loan contract for said sum of $250,000; that said Powell, Garard & Company then and there became the original taker and holder of said bonds and trust deed and advanced on account thereof, all the money, and the only moneys loaned in such behalf; that said notes and said second trust deed to said Chicago Title & Trust Company, being the securities mentioned and described in the bill of complaint sought to be foreclosed in said cause No. 32,385 were made, executed and delivered to said Powell, Garard & Company pursuant to and in consummation of said building loan contract.

The defendant further alleged that on March 13, 1923, the complainants in cause No. 32,385, and other interested parties in consideration of the making of said building loan, entered into a written contract with Powell, Garard & Company, to take from Powell, Garard & Company the notes or bonds mentioned in said second trust deed, on account, for work under their contracts, for the construction of said apartment hotel building to the extent of 30 per cent of their original contract prices for such work; that a true, correct and complete copy of said contract of March 13, 1923, is thereto attached, marked Exhibit ''A'' and made part of said answer; that pursuant to said contract of March 13, 1923, Powell, Garard & Company made an attempted transfer and delivery of several notes mentioned and described in the bill of complaint.

''The defendant further alleged that the said business of loaning money, and real estate brokerage then and there carried on by said Powell, Garard & Company as aforesaid, said loan contract, said first mortgage bonds and Trust Deed made, executed and delivered to said Powell, Garard & Company pursuant

to said loan contract for said sum of $250,000, and said contract of March 13, 1923, between said complainants, Avery Brundage and other contractors and Powell, Garard & Company, the several provisions of said loan contract, said bonds, and said Trust Deed and such indebtedness to said Powell, Garard & Company evidenced by said bonds and first Trust Deed and the transactions out of which said supposed securities arose, and also of the transactions had by and between said Powell, Garard & Company and said several contractors and between said Powell, Garard & Company and this defendant, pertaining to said supposed securities, were, and are each and all outside the said objects and beyond the powers of said corporation, Powell, Garard & Company, were, and are each and all *malum prohibitum* expressly prohibited by statute in such case made and provided, illegal, null and void.''

The defendant denied that said bonds mentioned and described in said first trust deed were or that any of them was, negotiated or sold or transferred or delivered to said alleged purchasers and holders, or that any of the said notes mentioned and described in said second trust deed and in said bill of complaint of said Avery Brundage and others, were negotiated, or sold or transferred or delivered by said Powell, Garard & Company to said complainants or to others as mentioned in said bill, or that any of said alleged transferees ever advanced or paid to the defendant, Mary L. Walker, any money or moneys or consideration in such behalf.

The defendant further states that any attempted negotiation, or attempted transfer, or attempted delivery of said bonds, or any of them, or said notes, or any of them, by or on the part of said Powell, Garard & Company was also ultra vires—wholly outside the objects of said corporation and beyond its powers, and also *malum prohibitum,* illegal, null and void.

"The defendant further answering said that said Garard Trust Company, formerly said Garard & Company, and also formerly Powell, Garard & Company, by reason of the several provisions of said loan contracts, said bonds and first Trust Deed, said notes and second Trust Deeds, making said corporation a party thereto, and by reason of the premises in said Bill and in said answer set forth, said Garard Trust Company was and is interested in the subject matter of said cause Number 32,385 and was and is a necessary indispensable party, and that said Circuit Court was without jurisdiction to proceed therein except and until said Garard Trust Company was made party to the proceedings therein."

Said Exhibit "A" attached to and made part of said amendments is dated March 13, 1923, addressed to Powell, Garard & Company, recites: "In consideration of your making a loan of $250,000 covering the Mary L. Walker hotel building, at Western Avenue and Pine Street, Joliet, Illinois, we hereby agree to take up to 30% of our original contract, plus extras as agreed upon to date, in second mortgage bonds on said property, bearing 7% interest, and payable on or before, $5,000 quarterly, beginning September 1, 1924," etc.; and the same is signed by said contractors with the amounts of the contracts set opposite their names, to wit: "Chester Johnson Electric Company, $5,500; Hansell-Elcock Company, $12,785; Avery Brundage, $74,800; D. H. Burnham & Company, $17,500; Adam Groth & Company, $6,475; Kaestner & Hecht Company, $9,750; C. H. Law Plumbing and Heating Company, $62,600; Morava Construction Company, $36,359; and National Fireproofing Company, $37,500."

The answer set forth that Avery Brundage had the contract for the masonry, concrete floors, and the rough carpentry in said building; that he had an unpaid balance of $21,309, which represented about 30

per cent of his contract price; that he agreed to, and did, accept 15 second mortgage notes in payment thereof; that he had not fully performed his contract nor furnished the labor and materials in accordance with his contract and the plans and specifications. The bill then sets forth in detail wherein Avery Brundage has failed in the performance of his contract. The defendant avers she was not in default in the payment of any of the notes held by Avery Brundage.

As to the claim of the complainant, McClintic-Marshall Construction Company, the answers say that its assignor, the Morava Construction Company, who had the contract for erecting the structural steel work of said building, had neglected and delayed starting at the proper time, under the terms and provisions of the contract; that the defendant was obliged to employ a superintendent for several weeks to be stationed at the plant of the Morava Construction Company to see that said Morava Construction Company and its employees were working on said structural steel to be used in the building; that said Morava Construction Company had failed to perform their contract as specified, and on account of such failure the defendant had been deprived of the large income from said building; that there had been a partial failure of consideration for said contracts; that a number of notes held by the complainant have been paid.

In answer to the D. H. Burnham & Company, the defendant alleges that said company had designed the heating system installed in said building and superintended installation thereof; that said heating system was wholly inadequate to heat certain floors of said building, and the dining room thereof; that during the winter of 1924, a great many of the rooms could not be heated sufficiently for the convenience of guests; that the Burnham Company installed a steam pipe on the outside of said building at the southwest corner thereof, and in the winter of 1924 said pipe froze and

the radiators and pipes in the southwest portion of the building burst and spoiled the window shades, furniture, rugs, and decorations, etc., which caused great damage and defendant was forced to spend a large sum of money for fixing and repairing the damage which was caused by the bursting of this pipe; that on account of the inconvenience to, and moving out of guests, said defendant had incurred a loss and suffered damages to the amount of $10,000; that she was required to equip and put the heating and plumbing system in the proper mechanical condition in order to prevent a recurrence of such damage and loss; that there had been a loss of $25,000 in the income from the apartments and rooms in the rear of said building, on account of the failure of said D. H. Burnham & Company to properly perform their duties as architects in the construction of said building; that in consequence there has been a total failure of consideration for the said notes held by D. H. Burnham & Company which they claim to hold as the legal holders thereof.

She further alleges that she was not permitted to sign any of the orders on the $250,000 in the hands of Powell, Garard & Company; that all the orders for withdrawals out of the construction fund were signed by D. H. Burnham & Company, the architects; that she was not permitted to control the withdrawal of the proceeds of said loan, and that in consequence said Burnham & Company had issued their certificates of completion of the work of the various contractors, and for material furnished in the construction of said building; that D. H. Burnham & Company had signed orders authorizing said contractors to draw money out of the funds in the hands of Powell, Garard & Company over the protest and complaints of the defendant; that she repeatedly complained that the work of such contractors in many instances, including that of the complainants in this case, was not completed, and that they should not be paid; that notwithstand-

ing. said protests and complaints, said Burnham & Company had issued said certificates of completion to complainants in this bill.

The answer further charges that at the time the Joliet National Bank was appointed receiver of said real estate and the building thereon, the defendant was in court but not represented by counsel and that the order appointing a receiver failed to provide that the complainant in said bill give a complainant's bond or that for good cause shown the giving of such bonds was excused or dispensed with as by statute in such case provided; that said order appointing said receiver was null and void, and that the receiver in possession of said premises was acting without order of law and should be removed by the court; that said receiver should be ordered to account for all money in its possession and all such amounts held by the receiver should be ordered turned over immediately to the defendant.

Mrs. Walker charges that the order, compelling her to vacate said apartment, which she had occupied as a homestead for herself and minor child, was illegal and void; that she was going to vacate under protest; that the order should be vacated and set aside and she be restored to the possession of her property and homestead.

The complainant and intervening petitioners in the case of the American Radiator Company against Mary L. Walker, case No. 32,385, filed an answer to the bill setting forth their claims substantially as contained in the original suit. Additional parties were granted leave to file answers to said bill and set up their individual claims and rights to the proceeds of the notes of the second deed of trust. Several parties were granted leave to intervene as judgment creditors of said Mary L. Walker.

On July 8, 1926, the Chicago Title & Trust Company as trustee under first trust deed of April 2, 1923, started suit in said court against Mary L. Walker

et al., for foreclosure of the first deed of trust. This case is numbered 33,256; the bill states that complainant was on April 2, 1923, and for a long time prior to and continuously since, has been a corporation organized under the laws of Illinois and duly authorized by its corporate charter to accept and execute trusts.

That on and prior to April 2, 1923, Mary L. Walker, the defendant and mortgagor, then a widow, being justly indebted in the principal sum of $250,000 to the legal holder or holders of the indebtedness hereinafter mentioned and in the trust deed attached as Exhibit 1, described, did make, execute and deliver her 440 certain bonds of that date for the aggregate principal sum of $250,000 under the terms of which said bonds she promised to pay the bearer (or to the registered owner) said principal sum, which said bonds are numbered serially and ran for the number of years and became due and payable without grace as follows, to wit:

| NUMBER OF BONDS | DENOMINATION | MATURITY | AMOUNT |
|---|---|---|---|
| 1 to 10, inclusive | $1000 | April 1, 1925 | $10,000.00 |
| 11 to 15, inclusive | 500 | April 1, 1925 | 2,500.00 |
| 16 to 25, inclusive | 1000 | April 1, 1926 | 10,000.00 |
| 26 to 30, inclusive | 500 | April 1, 1926 | 2,500.00 |
| 31 to 40, inclusive | 1000 | April 1, 1927 | 10,000.00 |
| 41 to 45, inclusive | 500 | April 1, 1927 | 2,500.00 |
| 46 to 55, inclusive | 1000 | April 1, 1928 | 10,000.00 |
| 56 to 60, inclusive | 500 | April 1, 1928 | 2,500.00 |
| 61 to 70, inclusive | 1000 | April 1, 1929 | 10,000.00 |
| 71 to 75, inclusive | 500 | April 1, 1929 | 2,500.00 |
| 76 to 85, inclusive | 1000 | April 1, 1930 | 10,000.00 |
| 86 to 90, inclusive | 500 | April 1, 1930 | 2,500.00 |
| 91 to 100, inclusive | 1000 | April 1, 1931 | 10,000.00 |
| 101 to 105, inclusive | 500 | April 1, 1931 | 2,500.00 |
| 106 to 115, inclusive | 1000 | April 1, 1932 | 10,000.00 |
| 116 to 120, inclusive | 500 | April 1, 1932 | 2,500.00 |
| 121 to 220, inclusive | 1000 | April 1, 1933 | 100,000.00 |
| 221 to 290, inclusive | 500 | April 1, 1933 | 35,000.00 |
| 291 to 440, inclusive | 100 | April 1, 1933 | 15,000.00 |

All of which said bonds bear interest at seven per cent per annum before and after maturity, payable semiannually on April 1 and October 1 each year, with interest coupons attached payable to bearer, there being one coupon for each semiannual instalment of interest on said bonds, all executed and authenticated in the name of said mortgagor by her lithograph signature.

That concurrently with the execution of said bonds and coupons, said mortgagor executed and delivered to complainant her trust deed of April 2, 1923, whereby for securing the payment of said principal and interest evidenced by said bonds and coupons, etc., she conveyed and warranted to complainant as trustee for the uses and purposes therein recited the said same premises (described as in the original petition in cause No. 31,651 and in the bill in cause No. 32,385), together with all improvements thereon, etc., and that said trust deed was filed for record on April 14, 1923, and recorded in the office of the recorder of Will county in Book 593, page 576.

That with variations as to number, denominations and maturity, said bonds and coupons are substantially in tenor and form as set forth in said trust deed and that all of said bonds were certified in writing by complainant as trustee as aforesaid by the indorsement of its certificate on each bond as per form set forth in the trust deed; that thereafter all of said bonds and coupons were issued, sold and delivered for value and some or all of them were sold, transferred and assigned to various persons, to complainant unknown, who thereupon became the bona fide legal holders and owners thereof for value and that all of said bonds and coupons are outstanding as existing indebtedness and valid obligations of said mortgagor; that by virtue of said bonds and coupons and said trust deed, complainant as trustee for the holders

and owners of said bonds and coupons, has a valid and subsisting lien upon said premises, improvements, etc.

Under the terms of said bonds, coupons and trust deed there became due and payable on April 1, 1925, the sum of $12,500 as principal on bonds 1 to 15, and as interest on the aggregate principal, $8,750; that on October 1, 1925, there became due as interest the further sum of $8,312.50; and on April 1, 1926, there became due the principal on bonds Nos. 16 to 30, inclusive, $12,500; and as interest on the aggregate principal $8,312.50; that on account of said principal and interest due as aforesaid, the mortgagor had paid $8,246.30, and that as to the balance, to wit: $33,882.40, which had matured as aforesaid, she had made and remained in default.

The bill alleges that to secure prompt payment of said principal and interest as the instalments respectively matured, said mortgagor covenanted that, commencing with May 20, 1923, and on and before the 20th day of each month thereafter, until the notes (bonds) and interest secured by said trust deed were paid, said mortgagor would deposit with Powell, Garard & Company, a corporation, under the laws of Illinois, with principal office in Chicago (said corporation having thereafter changed its name and become known as Garard & Company), one-twelfth of the amount of the principal and interest maturing during each 12-months' period, and that each such period should begin on May 20, in each year; that said Garard & Company should apply said deposited funds, together with interest to be credited thereon at the rate of three per cent per annum, while the same should be held in its possession, towards the payment of principal and interest as the same matured, but that nothing in such paragraph averred should relieve or release the mortgagor from any obligation imposed upon her by other covenants and agreements in said trust deed, bonds and coupons. Complainants represented that

the monthly deposits required to be deposited with said Garard & Company on April 1, 1925, for the purpose of meeting principal and interest payments maturing on that date, should have been the aggregate amount of $21,250, but that said mortgagor failed to make all monthly deposits required, and that the deposits made by her aggregate $8,246.30, so that she was in default on account thereof on April 1, 1925, in the sum of $13,003.70, and that since said date, the mortgagor had wholly failed to make any of the monthly deposits required under the terms of said trust deed.

That the mortgagor covenanted not to suffer any mechanics' liens to attach to the premises, and that said mortgagor had made further default in respect thereof, in that she did, in a certain proceeding instituted by said American Radiator Company in said circuit court of Will county, as case No. 31,651, suffer mechanics' liens to attach to said premises in favor of said American Radiator Company, the Johns-Manville, Incorporated, American Mosaic & Terrazzo Company, a corporation, and Victor Ahlvin and Martin Ahlvin, copartners, all of whom are hereinafter named as defendants; that thereafter on January 16, 1925, complainant duly notified said mortgagor of her default in suffering said liens to attach to said premises and in said notice demanded that she remove and cause to be removed the liens so attached, and further notified her that unless such liens were removed within 60 days after service of said notice, complainants would take such further steps as were provided by said trust deed, and that a copy of such notice, Exhibit 2, attached to said bill is made a part thereof.

That in said bonds described in said trust deed, Exhibit 1, it is provided that if default be made in the payment of any of the bonds or coupons, and such default shall continue for 30 days, the entire principal sum of said bonds shall, at the election of the legal

holder thereof, at once become due and payable and that the entire principal sum secured by said trust deed may thereupon become due and payable at the election of the legal holder or holders of one or more of said bonds and that in case of default for a period of 30 days in making payment of any of the bonds, principal or interest, then the whole principal sum secured by said trust deed at once without notice to any person interested, at the option of the holder of any one of said bonds, then unpaid, shall become due and payable; that because of and following the default by said mortgagor as above stated, one Sidney M. Greiling, then being the owner in due course of Bond No. 1 for $1,000 matured April 1, 1925, and coupon No. 4 for $35, maturing April 1, 1925, and also bond No. 18 for $1,000, matured April 1, 1926, and coupons Nos. 4, 5, and 6, for the aggregate sum of $105 which matured April 1, 1925, October 1, 1925 and April 1, 1926, did on April 1, 1926, declare the entire principal sum of the bonds aforesaid and the entire sum secured by said trust deed to be at once due and payable and in writing notified said mortgagor of said declaration as per said notice attached, marked Exhibit 3, and made part of said bill, and that said mortgagor had not paid said bonds or the interest thereon, or any part thereof.

The bill further alleges that the improvements upon said premises consist of a nine-story and basement fireproof structure of steel, tile pressed brick, Bedford stone and marble, containing stores, reception room, office lobby, 31 single hotel rooms, 21 three-room suites with kitchenettes, and 42 two-room suites with kitchenette, solarium, dining room, kitchen, laundry and various shops, and that said building is used for a hotel, store, apartment and restaurant purposes as aforesaid; that in case of foreclosure, the reasonable fees, charges and expenses of complainant incurred in such proceeding, and the fees of its attorneys and solicitors,

including all costs and expenses for solicitor's fees and attorney's fees, cost of documentary evidence, stenographer's charges, and abstract of title, and title guaranty policy and printing bills, etc., shall be further liens upon said premises to be paid out of the proceeds of the sale of the said property.

The bill further recites that in case of the filing of a bill to foreclose, a receiver might be appointed with the usual powers of a receiver in chancery, all without respect to the solvency or insolvency of said mortgagor and without respect to the then value of said premises or whether the same shall be then occupied as a homestead by the owner of the equity, or in case said premises are being improvidently and wastefully managed and operated, or their physical condition, good will and repute are being seriously impaired, or the then value materially lessened to the prejudice of complainant, and the holders of said bonds and coupons.

It is averred that on April 2, 1923, said mortgagor made, executed and delivered to said complainant her second trust deed, filed for record in the office of the receiver of Will county on April 14, 1923, as document No. 353572 to secure her said 135 principal promissory notes for said aggregate sum of $75,000 with interest at seven per cent per annum, conveying the premises aforesaid under and pursuant to which said second trust deed, complainant as trustee therein, has or claims some interest in said premises, which interest, however, is inferior and subject to the lien of said trust deed, Exhibit 1, attached to said bill; and also alleged that on April 13, 1925, said Avery Brundage, McClintic-Marshall Construction Company, Adam Groth & Company, Hubert Burnham and D. H. Burnham & Company filed their said bill then pending in said circuit court as case No. 32,385, against said Mary L. Walker and others, all of whom are in complain-

ant's bill named as defendants, to foreclose said second trust deed; and that pursuant to the prayer of said bill, on April 18, 1925, the Joliet National Bank of Joliet was appointed receiver of the premises aforesaid by an order entered in said prior proceedings, and that said bank accepted said appointment and qualified as a receiver and as such claims some interest in said premises, which however, complainant avers is inferior and subject to the lien of said trust deed, Exhibit 1, attached to complainant's bill.

It is alleged that complainant has performed laborious services and had employed attorneys and solicitors in said foreclosure for which complainant had become liable to pay large sums of money; that it is entitled to recover and to have paid to it reasonable compensation for exhibiting said bill and also reasonable compensation of its attorneys and solicitors for exhibiting and prosecuting said bill, and that complainant has expended certain moneys and incurred said obligation for procuring and continuing said abstracts of title and title guaranty policies to the said premises made for the purpose of said foreclosure and will be obligated to expend further sums for further opinion of title and further continuation of abstract of title, and guaranty policy or policies, and that complainant has a charge and lien against said property on account of such compensation and expenses; and that the same should be included in the decree to be entered in such foreclosure; that in the event of a foreclosure sale, there should be paid out of the proceeds of such sale: (1) All cost of such suit or suits, advertising, sale and conveyance including solicitor's and trustee's fees and stenographer's charges; (2) All moneys advanced by any person or persons who shall be party or parties to such foreclosure proceedings for taxes, assessments, etc.; (3) The bonds and coupons for the satisfaction of which said premises are being sold; (4) The overplus of the

purchase money, if any, to the mortgagor; and that all the sums due and payable as thereinbefore specified, constitute a first, prior and paramount lien against said premises.

The bill alleges that on July 24, 1925, said Mary L. Walker, the mortgagor, conveyed to one Catherine Schultz of Cincinnati, Ohio, by quitclaim deed, recorded in the office of the recorder of Will county, an undivided one-fourth interest in said premises in said trust deed described, and that subject to said lien and other incumbrances and liens, said mortgagor and Catherine Schultz, were then the owners of record of said premises.

The bill charges that numerous individual parties and corporations by their proper names are interested in said premises as lien claimants, judgment creditors or otherwise. Complainants averred that the interests of each and all of such persons are inferior and subject to the lien of said trust deed, Exhibit 1, attached to its said bill; that there are persons other than those in said bill designated by name, who are, or claim to be interested in the premises in said trust deed described or in the subject matter of said suit as owner or owners or holder or holders of bonds or coupons or both, secured by said trust deed hereto attached, marked Exhibit 1, and by the second trust deed hereinbefore mentioned, and that the names of such persons are, and the name of each of them is, unknown to your orator, which said owner or owners and holder or holders of said bonds or coupons, or both, are hereby made parties defendant to this suit, and sued herein by the name and description of "unknown owners"; that the holders and owners of the said bonds and coupons secured by said trust deed are numerous and in many cases unknown to complainant so that it is not practicable or possible to join all of them as parties to said suit by name, but that all of the owners and holders of bonds and coupons are legally repre-

sented in this behalf, by complainant as trustee, and that the bill to foreclose is filed by complainant for the benefit of each and all of the said owners and holders of said bonds and coupons.

Complainants, in and by the prayer to said bill, made all of the persons and corporations thereinbefore designated by name parties defendant, including the Chicago Title & Trust Company, as trustee, under the trust deed executed by Mary L. Walker, dated April 2, 1923, and recorded on April 14, 1923, as document No. 353572; and also "The unknown owner or owners, holder or holders, of the note or notes and other indebtedness secured by the Trust Deed last aforesaid; the unknown owner or owners, holder or holders of the note or notes and coupons and other indebtedness, secured by the said Trust Deed, executed by Mary L. Walker to Chicago Title and Trust Company, as Trustee, dated April 2, 1923 and recorded April 14, 1923, in Book 593, at page 576, as Document Number 353571"; and prayed that a receiver of the property covered by said trust deed, Exhibit 1, be appointed with the usual powers of receiver in like cases and with the special powers conferred by said trust deed; that an accounting be taken under the direction of said circuit court; that an accounting be had and taken of the amount due and unpaid upon said bonds and coupons secured by said trust deed and of the amount due to complainant for its services and disbursements and of its attorneys', solicitors' and counsel's fees; that said trust deed may be decreed to be a first, valid, superior and paramount lien upon said premises and also prayed for a decree of foreclosure, sale, etc., concluding with a general prayer for relief.

On November 30, 1926, on motion of complainant the Joliet National Bank was appointed receiver of said hotel property.

On July 21, 1926, the defendant, Mary L. Walker, by her solicitor, filed an appearance in said cause and

on August 30 of the same year, she filed an answer to the same the substance of which is as follows:

In paragraphs 1 and 2 defendant saved and reserved all benefit and advantage of exception to said bill; admitted that on April 2, 1923, she executed said trust deed of that date to secure said bonds also executed by defendant amounting to $250,000; but denied that she was justly indebted to the holders of said bonds in said principal sum of $250,000. In paragraphs 3, 4, 5 and 6, defendant alleged that the money she was to receive for executing said bonds in said sum of $250,000 as consideration therefor was held by said Powell, Garard & Company, as depository for said funds for the purpose of disbursing the same to various building contractors on account of their claims for work and materials furnished by them in the construction of said apartment hotel building; that the completion of the work of said contractors was to be evidenced by D. H. Burnham & Company and signed orders from the owner of said property and that said Powell, Garard & Company disbursed large amounts of money out of said loan to contractors and other persons in violation of the terms of said agreement notwithstanding the repeated protest and objection of said defendant.

There follow defenses as to defaults and breaches of contract on the part of said Avery Brundage, D. H. Burnham & Company, Charles H. Law and his subcontractors, the defenses as to Avery Brundage and D. H. Burnham & Company being set forth substantially as in her answer to their bill in case No. 32,385, and as to Charles H. Law and his subcontractors, alleged in substance: that said Charles H. Law had the contract for installation of the heating and plumbing in said building; that said Charles H. Law had gone into bankruptcy in December, 1923; that in August and September, 1923, said Charles H. Law threatened to give up and abandon his said contract and de-

manded in addition to his contract price, $2,000 as a condition to completing performance of said plumbing and heating contract; that said Powell, Garard & Company asked approval for payment of said additional sum of $2,000; that defendant protested against such demand and agreed thereto on condition that said Charles H. Law first get ''all through with the work''; that, notwithstanding said protest and condition and that no architects' certificate was issued therefor, said Powell, Garard & Company paid said Charles H. Law said $2,000 demanded as aforesaid; that said Powell, Garard & Company attempted to justify its course in such behalf on the grounds that said Charles H. Law could not go on with the work because firms refused to deliver material on his account at the Walker property because he was indebted to them on other jobs, and that such other bills must be first paid; that said Powell, Garard & Company paid out between $10,000 and $15,000 on account of claims against said Charles H. Law for materials furnished on other buildings and jobs with the result that claimants furnishing materials on the orders of said Charles H. Law had filed liens against said premises as follows: American Radiator Company for $2,602.48; the Kelly & Jones Company (assignor of the Walworth Company) for $10,000; Johns-Manville, Inc., for $1,043.60; Thomas Pump Company for $1,225; Joliet Sheet Metal Company for $929.88; William Ryan for $1,000; Sargent & Company for $1,028.31; Charles Berger for $2,743.60; Chester Johnson Electric Company for $232.65; Economy Pumping and Machinery Company, $450; that upon said Powell, Garard & Company paying said $2,000 to said Charles H. Law in September, 1923, he ''quit and never again showed up on the job''; that defendant had paid said Charles H. Law $5,000 before any money was paid to him from said loan fund; that the further installation of said heating and plumbing fell to defendant who was compelled to ex-

pend $25,000 to finish the roughing in and other details of the rough plumbing so that other crafts would not be delayed in their work of construction.

The answer in such behalf further alleged that even though said bonds had been executed and delivered for value, and sold and transferred to various persons to said complainant unknown, the same are subject to any defense of defendant constituting a total or partial failure of consideration and defendant denied that said holders are holders for the full amount of their bonds respectively, or that they have a good, valid and subsisting lien upon said premises and improvements.

Defendant denied that there became due and payable on April 1, 1925, said principal bonds, Nos. 1 to 15, of the aggregate amount of $12,500 and interest in the sum of $8,750; denied that on October 1, 1925, there became due thereunder as interest said further sum of $8,312.50; and denied that on April 1, 1926, there became due and payable said principal on bonds Nos. 16 to 30, inclusive, the aggregate amount of $12,500, and said alleged interest in the sum of $8,312.50; and said that at the time said securities were executed and delivered to said Powell, Garard & Company, said defendant paid to it, the sum of, to wit, $28,672, and that from time to time thereafter, she had made payments in further aggregate sum of, to wit, $36,918.30, on account of said principal and interest.

That said securities mentioned and described in said bill were and are tainted with usury and the foreclosure thereof subject to the defense of usury in this: (a) That said Powell, Garard & Company was incorporated under the General Corporation Act of Illinois, as evidenced by certificate of complete organization issued August 22, 1919, and filed for record in the office of the recorder of Cook county August 26, 1919, wherein the objects of said corporation were set forth

as follows: (Sets out verbatim copy thereof, the same as in defendant's answer in cause No. 32,385 and hereinbefore set forth); that thereafter said Powell, Garard & Company changed its name to Garard & Company but had effected no change in the objects of said corporation as originally incorporated; (b) That said Powell, Garard & Company as ''Principal and not as agent'' on April 2, 1923, at Chicago, within the State of Illinois, agreed to make a loan of its funds in the sum of $250,000 to the defendant at the stipulated interest of seven per cent per annum on said principal sum, payable semiannually, on October 1 and April 1 in each year, during the whole term of said loan, and after maturity until paid, which said loan and interest was evidenced by said bonds and trust deed, and were delivered to said Powell, Garard & Company as principal and lender on April 2, 1923, and said Powell, Garard & Company then and there acquired said securities and promised to advance and loan to defendant said sum of $250,000 on account of said securities delivered to said Powell, Garard & Company, as aforesaid; (c) That said Powell, Garard & Company, in making said loan and acquiring said securities, then and there wrongfully and corruptly intending to exact unlawful and usurious compensation for the use of its money loaned as aforesaid and as a part of said loan transaction exacted from the defendant and the defendant then and there agreed to pay, and paid to said Powell, Garard & Company said aggregate sum of, to wit, $28,672, as follows: Said Powell, Garard & Company charged and exacted $25,000 as pretended commission of 10 per cent on the amount of said loan for services by it rendered in making said loan and retained and appropriated for its own use, a large portion thereof, to wit, $5,000, to Francis M. Case—acting as agent and employee— of said Powell, Garard & Company in such behalf, and also $5,000 paid by the defendant executing her said

negotiable note to the order of Silas C. Hopkins, acting as agent of said Powell, Garard & Company in such behalf, and also $150 paid out of the proceeds of said loan to one Edward F. Seeley, an agent of said Powell, Garard & Company in such behalf, and then also exacted as a condition precedent to paying any money out of said building loan fund that defendant take out life insurance in the sum of $100,000 which compelled defendant to pay the premium therefor, in the sum of $3,022, and this, that said Powell, Garard & Company might make a commission of $3,022 for procuring said insurance and appropriated the same as compensation for the use of its money—all of which transactions were resorted to by said lender as a mere cover for usury and were all wholly outside the objects of said corporation, ultra vires, illegal, null and void. (d) That said Powell, Garard & Company in making said loan and acquiring said securities as a part of said loan transaction, further wrongfully and unlawfully exacted said stipulated provision in said trust deed, to wit, setting forth article 16 of said trust deed pertaining to requiring said defendant, commencing with the 20th day of May, 1933, and on or before the 20th day of each month thereafter, to deposit with Powell, Garard & Company, one-twelfth of the amount of principal and interest due during each 12-month period, being the provisions set forth in such behalf in said bill; that said Powell, Garard & Company made and accepted pursuant to said provision a one-twelfth part of the amount and interest for a time, and until it had been paid said sum of, to wit, $8,246.30; which said sum was by said Powell, Garard & Company withheld from application to said loan debt, that it might receive and have the use of said amount, so deposited with it and thereby receive an additional compensation for the use of its funds.

That said provision for the deposit of said one-twelfth of the amount of principal and stipulated interest until the maturity of said entire principal sum of $250,000 was by said Powell, Garard & Company wrongfully and corruptly intended as a means for exacting further unlawful and usurious compensation for the use of its money, and that said provisions and transactions thereby provided for, were wholly outside the objects of said corporation, ultra vires, illegal and void.

That the said transactions evidenced by said bonds and trust deed described in said bill were a mere cover for usury and that the actual transactions pertaining to the exaction of said pretended commissions, for life insurance, and for the deposit of said stipulated portion of interest, were all unlawful and usurious contrivances, wrongfully and corruptly imposed and exacted with intention to acquire compensation for the use of its money in excess of the highest legal rate, to wit, seven per cent per annum allowed by law for the use and forbearance of said sum of $250,000, and that said Powell, Garard & Company and the holders and owners of said bonds have forfeited the whole of said stipulated interest to be paid by defendant and to be received by said Powell, Garard & Company, and that the holders of said securities are entitled to recover the principal sum only after application of said payments aggregating $36,918.30 in liquidation of said principal indebtedness and also deduction of the moneys hereinbefore mentioned unlawfully and wrongfully paid out by said Powell, Garard & Company to contractors and subcontractors in the construction of said building in violation of the terms and provisions of said loan agreement.

Defendant admitted that said trust deed provided that said principal and interest were to be paid at the office of said Powell, Garard & Company in Chicago,

and that said several sums of money received by said Powell, Garard & Company and by it appropriated, as hereinbefore mentioned, should have been applied to the payment of said principal indebtedness.

Defendant denied that the trustee served the required notice of default for the period of time required under the terms of said trust deed and denied that any sufficient and proper notice was served on said trustee on behalf of said alleged holder and owner of said two bonds mentioned in said bill as being in default and denied that there was 20 per cent of the bonds secured by said trust deed unpaid and due according to the legal effect of said security and denied that said sum of, to wit, $21,500, of principal bonds was due on April 1, 1925, or any part thereof.

Defendant alleged that at the time said loan was made and said securities executed, defendant requested that she be permitted to sign orders upon the proper architect's certificates for the withdrawal of the funds of said Powell, Garard & Company and that from time to time thereafter during the progress of the work, defendant requested said Powell, Garard & Company not to pay said funds, except upon the approval of the defendant; that defendant was in the building and in personal contact with said construction work as the same progressed, and informed said Powell, Garard & Company from time to time of the various defaults on the part of said contractors and subcontractors and made repeated protests against its disbursements of said loan funds. Notwithstanding said Powell, Garard & Company in the inception of said loan transactions and throughout the progress of said building construction refused compliance with her said request and insisted on paying out said funds without defendant signing or approving said certificates and the withdrawal orders on said funds; and said Powell, Garard & Company notwithstanding said protest, well knowing that said contractors and said

subcontractors were in default because of defective material or defective work, were not entitled to receive payments, wrongfully disbursed said loan funds and in consequence 14 apartments in said building were left uncompleted and untenantable and said building was otherwise defectively constructed as hereinbefore mentioned; that it will require at least $10,000 to complete the same, and that because of said wrongful conduct of said Powell, Garard & Company, and because of the unfinished conditions of said building, defendant had been deprived of the income of said building, lien claims had been made and filed, and some of said lien claims and said second mortgage notes were being foreclosed and that said defendant had suffered damages in the sum of, to wit, $200,000, in consequence of said wrongful conduct of said Powell, Garard & Company, in handling said loan, and in making said wrongful charges and disbursements, and defendant denied that she was in default in the payment of any portion of said alleged indebtedness legally owing, and denied that she had been guilty of any default in such behalf.

Defendant further answering alleged that said Chicago Title & Trust Company should not be permitted to prosecute or maintain its said bill, and that it is wholly disqualified as a matter of law and equity from acting as trustee under said trust deed sought to be foreclosed by exhibiting its said bill, that is to say:

(A) Said Chicago Title & Trust Company, as trustee, under said trust deed securing said bonds, is the same identical corporation named as Chicago Title & Trust Company, as trustee, under said other trust deed, executed by defendant, April 21, 1923, recorded April 14, 1923, as document No. 353572, and made a party defendant to said bill, and said Chicago Title & Trust Company is engaged in the business of preparing and furnishing abstracts of title and title guaranty policies, and has been and is pecuniarily inter-

ested in prosecuting said bill adversely to the duties described in said second trust deed and adversely to this defendant; that is, said corporation as trustee under said first trust deed is not qualified to exhibit or maintain its bill as complainant against itself as defendant trustee under said second trust deed.

(B) Said West & Eckhart, as solicitors for the Chicago Title & Trust Company, are disqualified to act as solicitors for said complainant in that said Roy O. West has been appointed the attorney-in-fact of defendant in respect of proceedings for judgment in favor of the legal holder or holders of said bonds, etc.

(C) The claims, rights and interest of the bondholders under said first trust deed are opposed to and in conflict with the claims, rights and interest of the noteholders under second trust deed.

(D) Said Chicago Title & Trust Company, as trustee under the first trust deed, is named as defendant in the prior foreclosure instituted by said Avery Brundage, and others, and as a defendant therein, a party for all lawful purposes and said Chicago Title & Trust Company can assert therein such right, title and interest and claims as may be compatible with or pertaining to its lawful duties as a trustee of the property mentioned, and described in said second trust deed.

(E) The subject matter of said bill and the property mentioned and described in said first trust deed, also in the possession and charge of the receiver, appointed by said court in said prior cause, on April 18, 1925, and the subject matter of said bill in cause No. 33,256 are involved in the said litigation in said prior cause No. 32,385, and defendant should not be subjected to the unnecessary expense of separate suits, involving the same identical controversies. Said bondholders were necessary and indispensable parties in said prior proceedings to foreclose said supposed second mortgage, in that the actual amount of indebted-

ness, if any, lawfully secured by said trust deed, is controverted and not yet judicially determined.

(F) The prosecution of said bill is fraudulent, as against the rights, interests, equities, and claims of defendant and those of her said codefendants named in said bill.

On November 5, 1927, an order was entered, giving defendant leave to file instanter, an amendment to her amended answer. Said amendment filed on that date alleged in substance:

1. That said Powell, Garard & Company on March 7, 1923, in the City of Chicago, within the State of Illinois, being then and there a corporation having objects as in said amended answer set forth, engaged in the business of loaning money and in real estate brokerage, and particularly in making loans for the construction of buildings or the improvement of real estate and in negotiating the transfers of real estate by trust deed to secure such loans, said Powell, Garard & Company then and there procured from defendant a written application for the loan of its funds for the construction of said apartment hotel on the premises mentioned and described in said bill; that said application was also then and there accepted by said Powell, Garard & Company, and it then and there entered into a written contract with defendant, a true, correct and complete copy of which is attached, marked Exhibit "A" and made a part of said answer; that said bonds and trust deed were executed and delivered by defendant to said Powell, Garard & Company in consummation of said building loan contract and it then and there became the original taker and holder of said supposed securities and advanced on account thereof, all the money and the only money loaned in such behalf.

Further answering, defendant alleged that said business of loaning money and real estate brokerage, then and there carried on by said Powell, Garard &

Company, said loan contract, said bonds and said trust deed, the supposed indebtedness to said Powell, Garard & Company, evidenced thereby, and the transactions out of which said supposed securities arose were and are each and all ultra vires, outside the said objects and beyond the powers of said corporation, illegal, null and void; and that said bonds and trust deed constitute a mere cloud upon the title of said defendant, in and to said premises.

Defendant denies that said bonds described in said trust deed and bill were, or that any of them was, negotiated or sold, transferred or delivered to said alleged purchasers or holders particularly named or to others mentioned in said bill as unknown owners or holders, and denied that any of them have at any time asserted or claimed ownership thereof, except in said bill, which defendant alleged was exhibited in the interests of said Powell, Garard & Company; further answering said that any negotiation or sale, transfer or delivery of said bonds, by or on the part of said corporation was also ultra vires, wholly outside the objects of said corporation, beyond its powers, illegal, null and void.

Defendant alleged that said Powell, Garard & Company, after procuring said bonds and trust deed, and prior to exhibiting of the bill of said complainant trustee, first changed its name to Garard & Company and again changed its name to Garard Trust Company, and also changed its objects to that of doing a general trust business only, and that by reason of the several provisions of said loan contract, said bonds and said trust deed, making said corporation a party thereto, and by reason of the premises in said bill and in the answer set forth, said Garard Trust Company, formerly said Garard & Company, and also formerly said Powell, Garard & Company, was and is interested in the subject matter of said cause and a necessary and indispensable party to said bill and that said circuit

court is without jurisdiction to proceed except and until said Garard Trust Company is made a party to the proceeding thereunder.

Other parties defendant to the said suit were brought into court either by summons or entry of appearance and filed their respective answers to said bill. Replications were filed to the several answers. On November 11, 1927, on due proof of personal service and process on each of the following parties defendant: J. Schwartz & Company, Silas C. Hopkins & Company, Martin Brothers, Samuel W. Holmes, Werden Buck, Truby Grain and Coal Company, Joliet Sheet Metal Company, and the Columbia Casualty Company, an order was entered and taken on said bill as confessed by said defendants, and by proof of publication of notice, etc., as to the defendants, Catherine Schultz, Charles H. Law, and as to the unknown owners, as herein mentioned before in this statement, having been made parties defendant to the bill of complainant, was taken as confessed against them.

The court then entered an order consolidating the three cases—33,256, ·31,651 and 32,381, and the same was referred to the master in chancery to take proof and report his conclusions as to the law and fact in the case. The master took the proof and reported the same to the court. After the court had rendered his decision, leave was granted the Chicago Title & Trust Company to amend its bill by adding a paragraph as follows: "That said trust deed hereinbefore referred to and made a part thereof as exhibit 1, provides as follows: 'also that no bona fide innocent holders of any bond or bonds taken before maturity shall be affected as to the benefit of the security of any equity or matters of defense which may exist in favor of any party in interest against any prior holder of the bond or bonds held by such holder.' "

On the same date an order was entered giving the defendant, Mary L. Walker, leave to file her cross-bill, setting forth transactions subsequent to the filing of original bill and she was allowed further to amend her answer. The answer in substance is as follows: That the said provision of said trust deed, mentioned in said amendment or paragraph 17½ thereof, was and is illegal, null and void, in this: That said Chicago Title & Trust Company was, at the time this defendant made said application for loan and at the time said application for loan was accepted by said Garard Trust Company, formerly said Powell, Garard & Company, on, to wit, March 7, 1923, at said City of Chicago, in *pari delicto* with said Garard Trust Company, formerly Powell, Garard & Company, in establishing and maintaining during all of said period, the unlawful relations between said Powell, Garard & Company as lender and as holder of said bonds and trust deed in the first instance, and this defendant as borrower and maker of said papers; that said Chicago Title & Trust Company has been from the date of incorporation of said lender fully informed and its officers, directors, attorneys and agents in charge of its title guarantee business, at all times had knowledge and notice that the objects of said Powell, Garard & Company as set forth in its statements for incorporation and in said amendments to its said original objects and that its powers as defined by said General Corporation Act of 1919, did not authorize it to engage in the business of lending money; that prior to said loan transaction with this defendant, said Chicago Title & Trust Company had actively participated in a large number of real estate loans aggregating several millions of dollars, made by said Powell, Garard & Company as lender to various other parties as borrowers, and had issued and delivered to said Powell, Garard & Company as lender its mortgage guarantee policies in respect thereof; that said Chicago Title & Trust

Company knowingly and wrongfully participated with said Powell, Garard & Company in all of its said real estate loan transactions; that said Chicago Title & Trust Company wrongfully and unlawfully participated with said Powell, Garard & Company in establishing and maintaining said unlawful contractual relations which subsisted between said Powell, Garard & Company and said respective borrowers, including this defendant, during the entire period aforesaid; that the said mortgage guarantee policy mentioned in said application for loan was furnished by said Chicago Title & Trust Company at the special instance and request of said Powell, Garard & Company; that said policy was in the first instance delivered to and has been continuously since, held by said lender corporation except as introduced and received in evidence as an exhibit, ostensibly offered by said Chicago Title & Trust Company, but in fact produced and offered by, and in the interests of said Garard Trust Company; that said Chicago Title & Trust Company devised, drafted, printed and furnished said trust deed forms used by said lender in its real estate loan department; that the acceptance of said trust provided in said bonds and trust deed on the part of said Chicago Title & Trust Company and the identification and authentication of said bonds on its part were a part of said loan transaction; that said Chicago Title & Trust Company further wrongfully and unlawfully participated in the disposition of the proceeds of said loan as made by said Powell, Garard & Company, by procuring and receiving for and on account of the issuance of said mortgage guarantee policy, title searches, continuations of abstracts, identification and certification of said bonds, a large sum of money, to wit: several thousand dollars, paid by said Powell, Garard & Company directly to said Chicago Title & Trust Company in such behalf; that said Chicago Title & Trust Company by its said officers, directors, attor-

neys and agents, in charge of its said title guarantee business and trust business, at all times had knowledge and notice of all the facts in the premises, and was at all times fully advised that each and all of said loan transactions made by said Powell, Garard & Company were both ultra vires and *malum prohibitum* as heretofore in this amendment set forth; that the said specific provisions of said trust deed mentioned in said amendment to said bill, and as well, all the warranties, covenants and recitals in said bonds and trust deeds, were and are a part of and all predicated upon said loan transaction, wholly outside the objects of said corporation lender and beyond its powers as a corporation, and also expressly prohibited by statute, both ultra vires and *malum prohibitum,* illegal, null and void, and that said trustee acquired no title or estate in and to said premises to which said covenants or warranties would or can attach.

That on or about April 1, 1925, October 1, 1925, and April 1, 1926, said corporation lender reacquired from certain holders, said bonds Nos. 1–30, inclusive, and the said interest coupons which matured on said dates; that no agreement of purchase and sale was made by and between said Garard Trust Company and said former holders of said bonds and interest coupons or any of said holders; that said Garard Trust Company paid out its funds in such behalf without the knowledge, consent, request or authority of this defendant and without legal or equitable interest in said premises to be protected thereby; that each and all of said bonds and interest coupons which matured on the said respective dates were thus paid by said Garard Trust Company as a mere volunteer and that the same and the supposed indebtedness thereby are fully paid and satisfied; and that any and all cause or causes of action at law and in equity, in respect thereof, which it, the said complainant, as trustee, etc., or which said former holders of said bonds and coupons, or any of

them, then had, or which it or they, or any of them, should or might at any time or times thereafter, have, claim, allege or demand against this defendant, or against her real estate, mentioned and described in said amended bill, were by said transaction so had on or about said respective dates fully satisfied and released thereby and forever barred.

That said bond No. 1 for $1,000 and said coupon No. 4 matured on April 1, 1925, and said bond No. 18, also for the sum of $1,000 and said coupons Nos. 4, 5 and 6, for the aggregate of $105 on April 1, 1925, October 1, 1925 and April 1, 1926, if acquired and held by Sidney M. Greiling prior to the exhibiting of the original bill, the same were by him acquired from said Garard Trust Company after maturity thereof with knowledge and notice of the fact that the same had been paid and satisfied as hereinbefore set forth; that said Sidney Greiling was then employed by the said Garard Trust Company and familiar with all its transactions had in respect of said application for loan and the loan as made by said Powell, Garard & Company; that he had knowledge and notice of its corporate objects and powers and then well knew that said bonds and trust deeds evidencing said loans were ultra vires and *malum prohibitum,* illegal and void; and that all his acts and doings in respect of requesting or demanding foreclosure were for the purpose of assisting said Garard Trust Company in consummating a wrongful and illegal foreclosure of said supposed security.

And further answering she denies that said Chicago Title & Trust Company as trustee or otherwise legally paid out or expended any sums or sum whatsoever, or incurred any liability therefor, or for solicitors' fees, incident to instituting and prosecuting said foreclosure proceedings and says that all costs and expenses incurred in such behalf have been paid or assumed by said solicitor, West & Eckhart, and that in

connection with exhibiting its said original bill it procured a written undertaking from said West & Eckhart, as solicitors acting for and on behalf of said Garard Trust Company and said Sidney M. Greiling, exonerating said complainant of and from all liability or loss in respect thereof; and this defendant says that the said foreclosure proceedings were instituted and have been prosecuted throughout by said complainant acting for and in the exclusive interest of said Garard Trust Company in an illegal endeavor to enforce said supposed securities and accomplish for said Garard Trust Company, indirectly in the name of said Chicago Title & Trust Company as ostensible trustee what it, said Garard Trust Company, is prohibited from doing directly in respect of said illegal transactions.

On September 6, 1928, the defendant, Mary L. Walker, filed her cross-bill in said cause. The bill sets forth a recital of the pleadings theretofore filed in said cause; the reference of said consolidated causes to the master for taking proofs and reporting his conclusions of fact and law; that said master's report, together with the objections thereto and the deposition of witnesses and exhibits taken and received before said master were duly presented to and filed in said court, and an order entered that said objections made and filed before said master stand as exceptions to said report. Whereupon said consolidated cause was set down for hearing and argued before the court, on exceptions to said master's report, and said court made and announced its findings of fact and law in such behalf and among other findings, found, "That said Garard Trust Company, formerly Powell, Garard & Company, had in the first instance, acquired all of said bonds and interest coupons, and after disposing of the same to various purchasers, again reacquired a portion thereof, not by purchase from the holders but by payments made to them as the same were presented at its offices for payment on maturity thereof;

also found that after reacquiring said portion of said bonds and interest coupons as aforesaid, said Garard Trust Company disposed of two of said bonds in the sum of $1,000 each and the coupons pertaining thereto, to said Sidney M. Greiling; and, also, found that said complainant, Chicago Title & Trust Company, as trustee, exhibited its said bill of complaint herein at the request of said Sidney M. Greiling who is therein alleged to be the legal holder and owner of said two bonds and interest coupons pertaining thereto.

"That said Garard Trust Company had thus reacquired from said alleged or supposed purchasers, not by purchase thereof, but by payments of the supposed indebtedness evidenced thereby, through and by transactions had since said complainant exhibited its said bill of complaint, all the said bonds numbered 31 to 45, inclusive, matured on April 1, 1927, for the aggregate principal sum of $21,500, and all the said bonds numbered 46 to 60, inclusive, matured on April 1, 1928, for the further aggregate principal sum of $12,500, and all the said interest coupons mentioned and described in said bill of complaint as maturing and payable on the first day of October, 1926, and the first day of April, 1927, and on the first day of October, 1927, and on the first day of April, 1928; that said Garard Trust Company paid to each of the holders of said bonds and interest coupons matured and maturing as aforesaid the respective face amounts thereof as and when due according to the terms thereof; that all of the said bonds and interest coupons were thus paid by said Garard Trust Company as a mere volunteer; that no agreement of purchase and sale was made by and between said Garard Trust Company and said former holders of said bonds and coupons, or any of said holders; that said Garard Trust Company paid out its own funds in such behalf, having no right, title or interest in said premises to protect, and without the knowledge, consent, request or

authority of the oratrix; that all of the said bonds and coupons so reacquired by said Garard Trust Company since said complainant exhibited its said bill, and the supposed indebtedness evidenced thereby are fully paid and satisfied; and that any and all cause or causes of action, both at law and in equity, or otherwise, in respect thereof, which it, the said complainant, as trustee, etc., or which said holders of said bonds and interest coupons or any of them, then had, against the oratrix or against her said real estate, were by the said transactions so had since the exhibiting of said bill, fully paid and satisfied and thereby forever barred.

"That said Sidney M. Greiling did not appear or testify in said cause before said master, but caused said bond numbered 1, which matured April 1, 1925, and said bond numbered 18, which matured on, to-wit; the 1st day of April, 1926, and also the interest coupons in the sum of $35 each pertaining to said respective bonds, to be produced and offered in evidence before said master, and the same were received in evidence, and are now a part of the files and records in said cause; and your oratrix shows that said Sidney M. Greiling, and said complainant in his behalf and in behalf of said Garard Trust Company now wrongfully pretends and claims that said two bonds and interest coupons pertaining thereto remain unpaid and that said Sidney M. Greiling is the holder and owner thereof and entitled to have said complainant as trustee under said trust deed prosecute its said bill of complaint in respect thereof to hearing and final decree herein.

"That said Garard Trust Company caused all of the said other bonds and interest coupons pertaining thereto which matured prior to April 1, 1928, to be produced and received in evidence before said master and the same are now a part of the files and records in said cause; and the oratrix further represented that

she had reason to believe, and charged the truth to be on information and belief, that said Garard Trust Company has since the closing of proofs before said master, also, in the same manner, paid to said unknown holders and supposed owners of said bonds numbered 46 to 60 in the aggregate principal sum of $21,500 and the interest coupons pertaining thereto, matured on April 1, 1928, the respective face amounts thereof when and as the same were presented to it for payment at its offices, and that said Garard Trust Company has since the closing of said proofs before said master also in the same manner paid to said unknown holders and supposed owners of the interest coupons pertaining to the said remaining bonds numbered 61 to 440, inclusive matured on April 1, 1928, the respective face amounts of said coupons when and as presented for payment at its offices, and that it has thereby reacquired all of the bonds and interest coupons matured on said first day of April, 1928.

"That said Sidney M. Greiling and said Garard Trust Company have been, from the inception of the proceedings herein on the part of said complainant, represented by West & Eckhart as their solicitors in active charge of said proceedings; that said Sidney M. Greiling was acting in the interests of said Garard Trust Company in declaring or attempting to declare, the whole amount of said supposed indebtedness due and payable; and that said complainant through and by its said solicitors of record, West & Eckhart, was acting by the authority and in the interests of said Garard Trust Company in instituting and prosecuting said foreclosure proceedings herein.

"That said complainant ought not to have further proceeded in its said suit against the oratrix, or her said property, in respect of the said bonds and interest coupons paid and satisfied by said Garard Trust Company as aforesaid; but said complainant, notwithstand-

ing the said payment and satisfaction, intends to proceed in its said suit pretending to represent said Garard Trust Company in such behalf and that said Garard Trust Company reacquired said bonds and interest coupons matured since the exhibiting of said bill by purchase and sale, and also pretending that said Sidney M. Greiling also acquired said two bonds, and coupons pertaining thereto, by purchase and sale, pretends that it is by them authorized to proceed in the further prosecution of its said bill of complaint.

''That under the circumstances aforesaid the oratrix is unable to present the matters of payment and satisfaction arising out of said transactions had since exhibiting said bill as a defense herein, or otherwise tender an issue concerning the same as a bar to said suit in respect thereof, except by her cross-bill in such behalf.''

Said cross-bill concluded with a prayer in substance: Forasmuch as your oratrix is without defense in the said premises except by cross-bill, and to the end that said Sidney M. Greiling, said Garard Trust Company, and said Chicago Title & Trust Company as trustee under said trust deed mentioned and described in its said bill sought to be foreclosed herein, who are made parties defendant to this cross-bill, may be required to answer to the same, but not under oath, the answer under oath being thereby waived, and that said transactions so had on the part of said Garard Trust Company in respect of the said bonds and interest coupons by it reacquired as hereinbefore mentioned, including the said bonds and interest coupons now claimed by said Sidney M. Greiling, may be held and established by this honorable court as full payment and satisfaction of the said bonds and interest coupons pertaining thereto, reacquired by said Garard Trust Company as aforesaid and as full payment and satisfaction of the supposed indebtedness evidenced thereby, and as a

sufficient defense and bar to any further proceedings or relief sought herein by said Sidney M. Greiling, or by said Garard Trust Company, or by said complainant in respect thereof.

On September 17, 1928, an order was entered in said cause No. 33,256, providing that the answer of Avery Brundage, Walworth Company, Sutton Plastering Company, McClintic-Marshall Construction Company, D. H. Burnham & Company, Hansell-Elcock Company, Kaestner & Hecht Company, Adam Groth & Company and Chester Johnson Electric Company theretofore filed as answer to the bill of complainant of said complainant trustee, stand as their answers to the bill of said trustee as amended and also further ordered that said cause be reopened for the purpose of furnishing additional proof as to notes and coupons held by Garard Trust Company and Clarence Schultz, executor, and Catherine Schultz, executrix of the last will and testament of Charles Schultz, deceased, and it was further ordered that the replications theretofore filed in said cause, stand as to the cross-bill. The court proceeded to hear further evidence offered by the respective parties and said consolidated causes were again continued to September 21, 1928.

On September 17, 1928, said Garard Trust Company, successor to Garard & Company and to Powell, Garard & Company, and Sidney M. Greiling, filed their joint and several answer to the cross-bill of said Mary L. Walker in said cause No. 33,256 wherein (1) They admitted the filing of said pleadings and the reference of said consolidated causes to said master's report; that objections were filed thereto and over-ruled by said master and that said objections were ordered to stand as exceptions to said master's report; admitted that said cause was duly argued before the court and that theretofore the court made its findings of fact and conclusions of law in the premises and

among other things found that said Garard Trust Company, formerly Powell, Garard & Company, had in the first instance acquired all of said bonds and interest coupons and after disposing of the same to purchasers, again reacquired a portion thereof, not by purchase from the holders, but by payment made to them as the same were presented at its office for payment on maturity.

Admitted that the Sidney M. Greiling bonds in the sum of $1,000 each and the coupons thereto attached were amongst the said bonds so acquired and denied all other allegations and things contained in said paragraph 1 of cross-bill.

(2) Denied each and every allegation, matter and thing contained in paragraphs 2, 3, 4, 5, 6 and 7 of said cross-bill, except as thereinafter admitted, qualified or explained.

(3) Further answering said cross complaint, said defendants allege that subsequent to default in the payment of said bonds and interest coupons at the time of their maturity, the Garard Trust Company, or its predecessors, Garard & Company, and Powell, Garard & Company, purchased certain of said bonds and coupons from the legal owners and holders thereof for the purpose of protecting said bondholders from loss on account of the default by the complainant, Mary L. Walker, in making payments thereof according to the terms and conditions of said bonds and coupons; that all of the bonds and coupons acquired by the said Garard Trust Company or its predecessors in interest Garard & Company and Powell, Garard & Company, prior to the taking of testimony herein before the master in chancery for this court, were offered in evidence before said master and are now a part of the evidence in this cause and a part of the record herein; that neither the Garard Trust Company, nor its predecessors in interest, Garard & Company or

Powell, Garard & Company, have acquired any other of said bonds or coupons before or since the bonds and coupons above mentioned were offered in evidence except as hereinafter alleged; that the two Greiling bonds and the coupons thereto attached, and offered in evidence before the master in chancery for this court, were amongst the bonds and coupons so purchased from the bondholders as hereinbefore alleged and were acquired under the same circumstances and conditions as all other of said bonds so offered in evidence as hereinbefore alleged; that subsequent to the taking of evidence before the master and subsequent to offering in evidence as heretofore alleged all bonds and coupons held by the Garard Trust Company, said Garard Trust Company had acquired certain bonds and coupons (describing the same by number, date and amount, aggregating $19,899); that each and all of said bonds and coupons were acquired under the same circumstances and conditions as the bonds theretofore offered in evidence and denied that said transaction was a payment and not a purchase of said bonds and coupons, except that certain bonds (describing them), were acquired by exchange for other bonds before maturity.

On September 17, 1928, the Chicago Title & Trust Company as trustee of original bill of complaint, filed its answer to the cross-bill of said Mary L. Walker, and adopted the same answer as filed by the Garard Trust Company and Sidney M. Greiling. To these several answers the cross complainant filed replications.

On September 17, 1928, Clarence Schultz as one of the executors of the estate of Charles Schultz, deceased, filed a petition in said cause alleging that he was made a party to said suit as an unknown owner, and asked that leave be granted and permission given him to present certain notes involved in this litigation,

held by him as such executor. The petition was verified and the court granted him leave to introduce the said notes in evidence. The court proceeded to hear additional evidence relative to the ownership of the notes held by the Garard Trust Company, successors of Powell, Garard & Company, and entered a decree fixing the rights of the different parties.

Said decree recites: "Now, these consolidated causes having come on for final hearing upon the petitions, intervening petitions, bill of complaint and cross-complaint, and the amendments thereto filed by the petitioners, intervening petitioners, complainants and cross-complainant the answers of the defendants thereto and the amendments to said answers; the replications of the petitioners; intervening petitioners, complainants and cross-complainant to said answers and the amendments to said answers; and the default of the defendants not answering, and the disclaimer of George Poehner and A. C. Dillman, partners doing business as Poehner and Dillman, and Jose Ward Hoover, and the report of Charles D. Dibell, Master in Chancery of this Court, made in pursuance to the order of reference heretofore entered in each of said consolidated causes; the objections to said report filed by the complainants and certain of the defendants, including the defendant, Mary L. Walker, and the additional objections, filed by the said defendant, Mary L. Walker, which objections and additional objections were each and all overruled by said Master, and thereafter ordered by this Court to stand as exceptions thereto, and the Court having heretofore ordered that further proof be permitted by certain of said complainants and defendants which was introduced and heard by the Court, and the Court having heard the arguments of counsel for the respective parties and now being fully advised in the premises finds:"

That all parties to these causes are properly before this court; that the court has jurisdiction of the subject matter of these causes and all parties thereto; that all the material allegations in said petitions, intervening petitions and bills of complaint as amended are true and proven as therein set forth, except as hereinafter found; and that said master's report should be approved and confirmed; that the objections filed to said report by certain of said defendants, including the defendant, Mary L. Walker, should be overruled, except as hereinafter modified and changed; that petitioner American Radiator Company is entitled to a mechanic's lien upon the following described real estate and the improvements thereon situated in Joliet, Will county, Illinois, and described as follows: Beginning at the southeast corner of lot 31 in McArthur and Woodruff's addition to Joliet, running thence westerly along the south line of said lot 49.5 feet, thence northeasterly 102.6 feet to a point 53 feet westerly of the northeast corner of said Lot 31, thence southeasterly along the north line of said Lot 31, 53 feet to the northeast corner thereof, thence southwesterly along the east line of said Lot 31, 120.5 feet, to the place of beginning for materials furnished by it under its contract with the defendant Charles H. Law, doing business as Charles H. Law Plumbing & Heating Company, dated May 20, 1922, for use in construction of the apartment hotel building, now constructed and situated upon said above described real estate, in the sum of $2,602.48 with five per cent interest per annum thereon from March 10, 1924.

That the intervening petitioner, William M. Ryan, doing business as Wm. M. Ryan Sheet Metal Company, is entitled to a mechanic's lien upon said real estate and the improvements thereon, for labor and materials furnished by him under his contract with the defendant, Mary L. Walker, dated May 20, 1922,

in the construction of said apartment hotel building situated upon said real estate, in the sum of $1,000 with five per cent interest per annum thereon from December 13, 1924. The court found that the liens of the American Radiator Company and William M. Ryan, doing business as Wm. M. Ryan Sheet Metal Company, have no priority over each other as each of their said contracts was entered into on May 20, 1922; that said liens are preferred both as to the value of said real estate and the improvements now located thereon.

That intervening petitioner, American Mosaic & Terrazzo Company, is entitled to a mechanic's lien upon the real estate hereinbefore described and the improvements thereon, for labor and materials furnished by it under its contract with the defendant, Mary L. Walker, dated June 19, 1922, in the construction of said apartment hotel building situated upon said real estate, in the sum of $6,300 with five per cent interest per annum thereon from June 6, 1924, which lien is preferred both as to the value of said real estate and improvements now located thereon.

That the intervening petitioner, Johns-Manville, Incorporated, is entitled to a mechanic's lien upon the real estate hereinbefore described and the improvements thereon, for materials furnished by it under its contract with said defendant, Charles H. Law, doing business as Charles H. Law Plumbing & Heating Company, entered into on July 12, 1922, and July 13, 1922, respectively, in the construction of said apartment hotel building situated upon said real estate in the sum of $1,043.60 with five per cent interest per annum thereon from September 15, 1924, which lien is preferred both as to value of said real estate and improvements now located thereon.

That the intervening petitioners, Victor Ahlvin and Martin Ahlvin, copartners under the name and style

of Ahlvin & Son, are entitled to a mechanic's lien upon the real estate hereinbefore described and the improvements thereon, for labor and materials furnished by them under their contract with the defendant, Mary L. Walker, dated October 22, 1923, in the construction of said apartment hotel building, situated upon said real estate, in the sum of $2,916.52 with five per cent interest per annum from June 23, 1924, as heretofore decreed by this court in a decree entered on January 13, 1925, in cause No. 31,651; that said real estate and improvements thereon on the date of their said contract were of the value of $200,000 and were enhanced in value by reason thereof to the amount of $8,375.77; that said lien is preferred as to the value of said improvements erected on said premises by reason of said contract, subject only to the liens of said American Radiator Company, William M. Ryan, doing business as Wm. M. Ryan Sheet Metal Company, American Mosaic & Terrazzo and Johns-Manville, Incorporated.

That the intervening petitioner, Joliet Sheet Metal Company, filed its intervening petition in cause No. 31,651 on October 15, 1924, and is entitled to a mechanic's lien upon the real estate hereinbefore described and the improvements thereon, for labor and materials furnished by it under contract with the defendant, Mary L. Walker, in the construction of said apartment hotel building, situated upon said real estate in the sum of $358.52, with five per cent interest per annum thereon from October 15, 1924. Said lien is subject to the liens of said American Radiator Company, William M. Ryan, doing business as Wm. M. Ryan Sheet Metal Company, American Mosaic & Terrazzo Company, Johns-Manville, Incorporated, Victor Ahlvin and Martin Ahlvin, copartners under the name and style of Ahlvin & Son, and the indebtedness secured by the first and second trust deeds hereinafter

found to be due and payable; that said intervening petitioner is not entitled to its claim for mechanic's lien in the sum of $571.36 for materials and labor furnished under its original contract with the defendant, Charles H. Law, doing business as Charles H. Law Plumbing & Heating Company, for the reason that it failed to file its intervening petition within the time required by law.

That intervening petitioner, Charles W. Berger, doing business as Berger Electrical Company, filed his intervening petition in cause No. 31,651 on January 30, 1925, and is entitled to a mechanic's lien upon the real estate hereinbefore described and the improvements thereon, for labor and materials furnished by him under the several contracts with the defendant, Mary L. Walker, in the construction of said apartment hotel building, situated upon said real estate, in the sum of $2,741.40 with five per cent interest per annum thereon from January 30, 1925; that said lien is subject to the liens of said American Radiator Company, William M. Ryan, doing business as Wm. M. Ryan Sheet Metal Company, American Mosaic & Terrazzo Company, Johns-Manville, Incorporated, Victor Ahlvin and Martin Ahlvin, copartners under the name and style of Ahlvin & Son, Joliet Sheet Metal Company, the judgment of Silas C. Hopkins, dated January 22, 1925, for $582.50 and costs, and the indebtedness secured by the first and second trust deeds hereinafter found to be due and payable.

That the intervening petitioner, Thomas Pump Company, filed its intervening petition in cause No. 31,651 on March 10, 1925, and is entitled to a mechanic's lien upon the real estate hereinbefore described and the improvements thereon, for labor and materials furnished by it under its contract with the defendant, Mary L. Walker, dated July 2, 1924, in the construction of said apartment hotel building, situated upon said

real estate, in the sum of $240 with five per cent interest per annum thereon from March 10, 1925; that said lien is subject to the liens of said American Radiator Company, William M. Ryan, doing business as Wm. M. Ryan Sheet Metal Company, American Mosaic & Terrazzo Company, Johns-Manville, Incorporated, Victor Ahlvin and Martin Ahlvin, copartners under the name and style of Ahlvin & Son, Joliet Sheet Metal Company, the judgment of Silas C. Hopkins dated January 22, 1925 for $582.50 and costs, Charles W. Berger, doing business as Berger Electrical Company, and the indebtedness secured by the first and second trust deeds hereinafter found to be due and payable; that above intervening petitioner is not entitled to its claim for mechanic's lien in the sum of $260 for labor and materials furnished under its original contract with the defendant, Charles H. Law, doing business as Charles H. Law Plumbing & Heating Company for the reason that it failed to file its intervening petition within the required time by law.

The court also found that there are many judgment creditors that are entitled to liens against this property, and by the decree fixed their rights, the court also found that the bonds secured by the $250,000 deed of trust and also the bonds of $75,000 secured by second deed of trust, were valid and existing liens upon the property and fixed the rights of the respective parties relative to their liens and priority. In paragraph 23 of the decree, the court sets forth the rights of the parties in the following language: "On the 24th day of July, 1925, said defendant, Mary L. Walker, made, executed and delivered to one Catherine Schultz, one of the defendants herein, a quit-claim deed to an undivided one-fourth interest in and to the real estate hereinbefore described, together with the improvements thereon, which said deed was duly acknowledged and was recorded on said date in the office of the Re-

corder of Deeds of Will County, Illinois, as Document No. 382639; that the interest of said defendant, Catherine Schultz, if any, in and to said property by reason of said quit-claim deed is subsequent, subject and inferior to the lien of the said trust deeds and the indebtedness described therein and secured therein and secured thereby, and is subsequent, subject and inferior to the liens of the following lien claimants, to-wit: American Radiator Company, William M. Ryan, doing business as Wm. M. Ryan Sheet Metal Company, American Mosaic and Terrazzo Company, Johns-Manville, Incorporated, Victor Ahlvin and Martin Ahlvin, copartners under the name and style of Ahlvin and Son, Joliet Sheet Metal Company, Charles W. Berger, doing business as Berger Electrical Company, and Thomas Pump Company, and is subsequent, subject and inferior to the judgments of the following judgment creditors, to-wit: Silas C. Hopkins, Curtis Door and Sash Company, National Advertising Company, Martin Brothers, Samuel Holmes, Werden Buck, Truby Grain, Feed and Coal Company, and Marshall Field & Company."

From the rendition of this decree Mary L. Walker prayed an appeal to this court. The appeal was not perfected and the case was brought to this court on a writ of error. It was submitted on briefs and oral arguments at a former term of this court. Catherine Schultz filed an affidavit in this court in which she stated that she had not been served with notice of the writ of error and asked leave to be made a party plaintiff in error in this suit, and be given leave to assign additional errors. This motion was granted. Catherine Schultz adopted the assignment of errors as set forth in the record and brief of the original plaintiff in error, Mary L. Walker. The case was again submitted to this court on the printed briefs.

We have examined the evidence in this case relative to the various mechanic's lien claims, and judgment creditors. On account of the voluminous record we will not attempt to quote the evidence in regard to these different claims. From the examination of the record we are satisfied that each and every one of the lien claimants has substantially complied with their contracts, gave the proper notice to preserve their liens, and the court properly found that they were all entitled to liens on the premises in question in the order as set forth in the decree.

The plaintiff in error insists that the Chicago Title & Trust Company came into the court with unclean hands and is therefore not entitled to prosecute its suit; that the Chicago Title & Trust Company represented Sidney M. Greiling, the owner of two $1,000 bonds and made the other bondholders parties to the suit as unknown owner or holders of the notes and coupons, and other indebtedness secured by the said trust deed executed by Mary L. Walker to the Chicago Title & Trust Company, dated April 2, 1923; that the judge in rendering his oral decision prior to signing the decree, made a statement to the effect that it was apparent from the record that the attorneys for the Chicago Title & Trust Company knew, or by the exercise of reasonable care could have ascertained, the names of the holders of the great majority of these bonds and have made them parties to the bill by name, instead of unknown owners. The defendant now insists that this was a fraud upon the court and the Chicago Title & Trust Company should be barred from maintaining the suit to foreclose the trust deed.

The bill alleges that "Sidney M. Greiling was the owner of bonds 1 and 18 and the coupons thereto attached. The bill further alleges (after stating the nature and amount and etc. of the bonds) that the holders and owners of said bonds and coupons se-

cured by the trust deed thereof marked exhibit '1', are numerous and in many cases unknown to your orator so it is not practical or possible to join all of them as parties to said suit by name but that all of the owners and holders of bonds and coupons last aforesaid are duly and legally represented in this behalf by your orator as trustee aforesaid and this bill to foreclose is filed by your orator for the benefit of each and all of the holders and owners of each and all of the said bonds and coupons secured thereby in manner and form as provided in and by the trust deed.''

Article 7 of the trust deed provides that if default is made in the payment of the interest or bonds, the trustee is given the right to take possession of said premises and file suit to foreclose, etc. Section 8 of said trust deed provides that ''the foregoing provision for entry, taking possession and operation under the power aforesaid is cumulative, with the ordinary remedy of foreclosure, and upon default being made as provided in this trust deed, and upon the request in writing of the holder or holders of *one or more* of the then outstanding bonds, it shall be the duty of the trustee to institute a suit for foreclosure.''

The record thoroughly establishes the fact that Sidney M. Greiling was the owner of two bonds Nos. 1 and 18, each for the face value of $1,000, and the coupons thereto attached; that he gave notice to Mrs. Mary L. Walker that he was the owner of the two notes and the coupons attached thereto; that the same were due and not paid; that they were a part of the bonds and the indebtedness secured by the $250,000 bond issue, and that under the provision thereof pursuant to the provision as set forth in said bond and in the trust deed securing the same, he thereby declared due and payable at once the entire principal of the bonds secured by the trust deed. Counsel for

plaintiff in error has not pointed out, nor called this court's attention to any evidence in the record that tends to disprove the claim of ownership of Sidney M. Greiling to these two bonds. This court therefore holds as a matter of fact that Sidney M. Greiling was at the time of the hearing of this case the owner of the bonds Nos. 1 and 18 and the coupons thereto attached.

In the case of *Farmers' Loan & Trust Co. v. Lake Street Elevated R. Co.,* 173 Ill. 439, the question was, Were the necessary and proper parties to the suit before the court? In passing upon that question the court used the following language: ''It is further contended on the part of the appellant, that the court below erred in entering the decree appealed from without requiring all the bondholders to be made parties to the suit. We think that, under the circumstances of this case, this contention is without force. It is true, as a general rule, that all parties interested in the subject matter of the suit should be made parties, and that, when foreclosure is sought of a mortgage or deed of trust, the *cestuis que trustent,* as well as the trustee, should be made parties, but there are two well established exceptions to this rule. The first is, that, where the absent parties are properly represented, it is sufficient to make such representatives parties to the suit. In *Hale v. Hale,* 146 Ill. 227, p. 257, we said: 'When it appears that a particular party, though not before the court in person, is so far represented by others that his interests receive actual and efficient protection, the decree may be held to be binding upon him.' Jones, on Corporate Bonds and Mortgages (sec. 398) says: 'A trustee for bondholders represents their interests, and, when made a party to a suit affecting their interests they are as much bound by the decree rendered in the suit as if they were individually made parties to the suit.'

''Another exception to the rule is, that, where the beneficiaries are very numerous, so that the delay and

expense of bringing them in becomes oppressive and burdensome, they will not be deemed necessary parties where the trustee or trustees representing them are made parties." *St. Louis & P. R. Co. v. Kerr,* 153 Ill. 182; *Chicago & G. W. R. Land Co. v. Peck,* 112 Ill. 408; *Sohm v. Royal Hotel Co.,* 232 Ill. App. 60; *American Trust & Safe Deposit Co. v. 180 East Delaware Bldg. Corp.,* 262 Ill. App. 67. It appears from the record that the holders of these bonds were numerous (approximately 450); that under the order of the court the bonds were delivered to the master in chancery in lieu of cash at the master's sale, at which sale the protective committee purchased the property. The rights of the bondholders have been fully and carefully protected. We cannot see where Mrs. Walker's rights are in any way affected, whether the Chicago Title & Trust Company represented one or all of the bondholders, and her objection that the court was without jurisdiction to hear this cause is not well founded.

It is insisted by plaintiff in error that the circuit court erred in and by its said order of April 15, 1925, in appointing the Joliet National Bank of Joliet, Illinois, as receiver to take charge of said property; and also by its foreclosure decree of November 1, 1928, and by its decree of March 8, 1925, and also in continuing said receivership pending the period of redemption of said sale. She contends that the appointment and the continuation of the receivership is in violation of the statute, and that the court is without jurisdiction to appoint the same. Whether or not the appointment of the receiver was erroneous, Mrs. Walker is not now in a position to urge this before this court, as the appointment was an interlocutory order and as such was an appealable order. The record discloses that she has ratified the action of the court in the appointment of the receiver.

Under the order of the court in the receivership matter, the Joliet National Bank, as such receiver, paid

to Mary L. Walker the sum of $12,070 for rent on personal property, used in furnishing the hotel, and owned by Mrs. Walker. After the appointment of the receiver it was necessary to raise money to further furnish and finish the hotel building. Mrs. Walker in open court consented to the issuance of receiver's certificates in an amount not to exceed $50,000 to be used for these purposes. It is our opinion that Mrs. Walker is estopped from questioning the validity of the receiver's appointment. *Roby v. Title Guarantee & Trust Co.,* 166 Ill. 336; *Reardon v. Youngquist,* 189 Ill. App. 3; *Driever v. Shephard,* 259 Ill. App. 239.

After the consolidation of the three cases the cause was referred to the master in chancery to take the proof and report to the court his conclusion of the law and fact. The master did take proof, which is very voluminous (approximately 5,000 pages including the exhibits) and reported to the court his conclusions of fact and law in the case. The plaintiff in error filed objections to the said report. The objections were allowed to stand as exceptions to the report in the trial court. The trial court considered the record as presented and overruled the exceptions to the master's report. The court gave his conclusions as to the facts proven and the law applicable thereto and suggested to the interested parties that if their bill was amended to comply with his decision that he thought it would be advisable. He also suggested that proof should be taken relative to the ownership and possession of certain bonds of the $250,000 issue.

The amendments were made and the court without further reference to the master proceeded to hear the evidence relative to the ownership of the bonds. The plaintiff in error now insists that this was error for the court to hear evidence, but that the cause should have been referred to the master in chancery to take proofs in regard to this question. We cannot see in

what way plaintiff in error could be damaged by the chancellor hearing the evidence instead of referring it to the master to take this proof. The chancellor had fully considered all of the evidence which had been taken by the master and it was at the court's own suggestion that this additional proof be taken to establish the rights of the parties to these bonds. There was no accounting to be made, but the hearing was to establish the rights of ownership to the bonds.

The court found that the master should have made specific findings of fact in regard to the different accounts. The objection to that part of his report was a valid objection. However, the court in its decree has fully set forth the findings of each of the complainants in the various bills and any errors that may have been committed had been cured by the court in setting forth the facts in the decree.

The main defense of the plaintiff in error is that the transaction between Powell, Garard & Company and Mary L. Walker *was a loan of money and not a bond issue;* and therefore, the bonds and trust deeds issued thereunder are ultra vires and *malum prohibitum* and the same is usurious and void.

Avery Brundage and others, holders of notes secured by the second deed of trust, and lien claimants, in their brief and argument also urge that the notes secured by the first deed of trust are ultra vires, usurious and void, and, therefore, the court erred in holding that their second deed of trust was inferior to the first deed of trust. In case No. 32,385, in which Avery Brundage et al. were complainants, in the 19th paragraph of their bill, they represent unto the court: "That their trust deed is subject to the lien of a prior trust deed given to secure a bond issue loan of $250,000." These complainants admit in their bill that their rights are subject to the first deed of trust. They are not parties to the first deed of trust. They

entered into no contract with Powell, Garard & Company which the trustee, the Chicago Title & Trust Company sought to enforce in this proceeding. Fletcher in his work on Corporations, Vol. 7, page 594, says: "Except where it is otherwise provided by statute, it is a general rule, subject to certain exceptions, that a plea of ultra vires cannot be interposed by a stranger not a party to the contract, at least if he is not injured by such contract." *Daniels v. Belvidere Cemetery Ass'n,* 193 Ill. 181; *Independent Order of Svithiod v. Ring Lodge,* 261 Ill. App. 289; *Golconda Northern Ry. v. Gulf Lines Connecting R.,* 265 Ill. 194; and *Old Colony Trust Co. v. City of Wichita,* 123 Fed. 762. It is our opinion that the defense of ultra vires was not available to these complainants in this bill.

The same complainants seek to interpose the defense of usury. Paragraph 7 of chapter 74 of Cahill's Revised Statutes provides as follows: "The defense of usury shall not be allowed in any suit, unless the person relying upon such defense shall set up the same by plea, or file in the cause a notice in writing, stating that he intends to defend against the contract sued upon or set off, on the ground that the contract is usurious." Our courts have held that the right of a debtor to take advantage of usury, in his debtor's contract with other creditors, has been denied on the broad grounds that the defense is personal to the debtor, and that it cannot be set up by a stranger to the contract, but only by the parties or their legal representatives and those in privity. 27 R. C. L. 283; *Darst v. Bates,* 95 Ill. 493.

In the case of *Union Nat. Bank v. International Bank,* 123 Ill. 510, it is held that the second mortgagee whose mortgage has not been foreclosed, and who has not been let into possession under his mortgage, cannot interpose the defense of usury, in the indebtedness

secured by a prior mortgage to a bill for a foreclosure. The court in its opinion says:

"The right to set up usury as a defense is personal to the debtor. If any one is injured by the usury, it is he, and it is for him to say whether he has been injured or not. If he chooses to perform the contract, or to waive the defense of usury, no one else has a right to say that he shall not do so. It is for him to elect. Those, however, who are in privity with the borrower, it is held, may also set up the defense. 'The term "privity," ' says Greenleaf, in his work on Evidence (Vol. 1, sec. 189), 'denotes mutual or successive relationship to the same rights of property.' There can be no ground for pretending that there is privity between the mortgagor of a usurious mortgage and the mortgagee of a subsequent and junior mortgage, other than by contract or in estate; and we think it quite clear that there is no privity in either of these respects. It is enough to say, on the question of privity by contract, that the junior mortgagee was neither directly nor indirectly a party to the usurious contract, and he derives and makes claim to no right through or resulting from it."

In the case of *Hibernian Bank Ass'n v. Davis,* 295 Ill. 537, it is said: "The defense of usury is a right personal to the debtor and must be by him pleaded. If he is injured by usury it is for him to say whether such is so. He may choose to perform the contract and waive the defense of usury. No one else has the right to raise that defense." The complainants in this case have not by their pleadings raised the question of ultra vires or usury, and they are now barred from raising that question in this court.

Mary L. Walker, the plaintiff in error, seriously insists that the notes of $250,000 represented by what is commonly termed "the first deed of trust," are ultra vires, usurious and void, for the reason that Powell,

Garard & Company under the terms of their incorporation were not authorized to make a loan of money and that this transaction was a loan of money and not what is commonly termed "a sale of credits." The Chicago Title & Trust Company just as seriously contends that it is not a loan but a sale of credit, and therefore, the notes and trust deeds are legal and binding and not usurious.

When Mrs. Walker made her application for this money she signed a written instrument which is as follows:

### APPLICATION FOR LOAN

March 7, 1923.

Powell, Garard & Company:

I hereby make application to you for a loan of $250,000, payable as follows: None one year after date; $12,500, two years after date; $12,500, three years after date; $12,500, four years after date; $12,500, five years after date; $12,500, six years after date; $12,500, seven years after date; $12,500, eight years after date; $12,500, nine years after date; $150,000, ten years after date; with interest at seven per cent per annum, payable half-yearly and principal and interest to be payable at your office in gold coin of the United States, of the present standard of weight and fineness.

For such loan, borrower will give her principal notes and interest notes, or a series of coupon bonds in such denominations as you may require, signed by herself and none and unconditionally, guaranteed by herself. Said notes or bonds to be dated March 1, 1923, and to be secured by a trust deed of same date (all in your usual form and shall contain a further provision requiring the borrower to pay the State and Federal Income Tax upon the income represented by the interest on said bonds, if lawful, and the borrower shall

also furnish, at borrower's expense, all revenue, state and governmental stamps necessary to be placed upon said trust deed and notes or bonds), conveying in fee simple, free of incumbrances and liens, and with release of dower and homestead, the following described real estate, situated in the County of Cook, and State of Illinois, to wit: Lot 31, in McArthur & Woodruff's addition to Joliet ........ said land being 49.6 feet by 120.6 feet fronting 49.6 on Western avenue N. W. Corner of Pine street and to be improved with a nine-story steel and tile arch building as per plans and specifications made by D. H. Burnham & Company, and submitted herewith and made a part hereof ........ Street number 417 Western avenue and NW corner of Pine street. The title to said real estate is in Mary L. Walker, a widow. The only others having an interest in this property are none. The cost of building to be erected will be not less than $425,000. The building will be finished in 1923 and will be worth ........ ; The present cash value of the land is not less than $25,000.

The machinery, engines, boilers, shafting, pulleys, heating plants, lifting apparatus, fixtures, dynamos, motors, switchboards, and other devices in said building and permanently affixed thereto and necessary for the uses for which the building is designed are to be made a part of the security for this loan and are worth not less than including furnishings........$75,000.

Total security for this loan $525,000.

All building restrictions have been or will be complied with.

There is no party wall on either line of said land, I will furnish you with a survey by a surveyor satisfactory to you, showing said building to be wholly within the lines of the land above described and complying with all building and other similar restrictions.

Said building will be occupied by various tenants and the gross income will be $150,000.

The expenditures of all kinds for operation, maintenance, etc., exclusive of interest, do not exceed ........$35,000 and are divided about as follows: Taxes—$........., Insurance—$........., Water—$........., Light—$........., Janitor—$........., Fuel—$........., Repairs—$........., Decorating—$........, All other expenditures ..........

Net income not less than $115,000.

Borrower now owns a merchantable abstract of title to said premises, which borrower will deliver to you, continued as at present, and to remain in your hands for your use or the use of any subsequent owner of said loan until such time as the loan is released and then to be delivered to subsequent owner of said loan until such time as the loan is released and then to be delivered to her, her heirs or assigns.

Borrower will pay the fee for recording the mortgage, or trust deed, a sufficient amount to cover the cost for lithographing and certifying the bonds, and will also pay you $25,000, for making said loan and for your services in preparing the necessary papers.

You are authorized to procure, at borrower's expense, mortgage guarantee policy for $250,000 covering said loan.

Borrower will furnish a water-colored sketch of the building, such sketch to be of the size ordinarily used by you. Borrower agrees to pay the cost (not to exceed ........), for such sketch.

Borrower covenants and agrees that, commencing with the 20th day of the next month after the date of the deed of trust, and on the 20th day of each month thereafter, borrower will deposit with your company a sum equal to 1-12 of the interest and principal maturing during each succeeding 12 months, beginning on the 20th day of April, 19—. You are to credit in-

terest at the rate of three per cent per annum on the
moneys thus deposited in accordance with this para-
graph while the same is in your possession. You are
to apply the said deposited funds, together with the
interest credited thereon, towards the payment of in-
stalments of principal and interest as they severally
mature. Nothing in this paragraph contained shall
relieve or release the borrower or the guarantor from
any liability or obligation imposed upon said borrower
or the guarantor by the covenants and agreements of
the deed of trust, or of the bonds or notes therein
described.

You are herewith authorized to secure all insurance
policies of every kind and character provided for in
the deed of trust in insurance companies of your selec-
tion, with loss clause to the trustee, and borrower here-
by agrees to pay promptly the amounts charged by
said companies for the premiums on all insurance or-
dered by you under this authority, and the amount
thus paid out by you shall become so much additional
moneys secured by the deed of trust, and the failure
to pay same by borrower upon demand shall consti-
tute default in accordance with terms and provisions
of the deed of trust.

You will first deduct from the amount of this loan
the charges and expenses herein provided for includ-
ing the amount to be paid for your services in making
this loan; recording fees; revenue stamps; charge for
lithographing; and certifying bonds; cost of owner's
and mortgage guarantee policies; water-colored sketch
and amount required to cover the insurance premiums
on policies procured, or to be procured by you, in ac-
cordance with this application. The proceeds, after
deducting the charges and expenses, as above, will be
deposited with you to be disbursed as follows: First,
pay none existing incumbrances—upon said premises,
amounting to $........ together with interest there-

on and the necessary fees for releasing same, said
lien ........ held as follows: First Mortgage......
None...... held by ........ due ........ . Second
Mortgage, None...... held by ........ due ........
Second: Pay all general taxes now due and in collec-
tion. If not now in collection, reserve a sufficient sum
to pay same as soon as said taxes may be paid, if pay-
able within the next four months. Third: Pay the
remaining instalments of all special assessments lev-
ied against the property for improvements already
made.

It is understood and agreed that so long as any of
the bonds to be issued hereunder are outstanding the
manager of the property securing this issue shall be
selected or approved by Powell, Garard & Company.

Borrower also agrees to hold Powell, Garard & Com-
pany harmless against any claim for commission which
may be made by or through Edgar F. Seney. It is
also agreed that the borrower will carry life insurance
amounting to $50,000, made payable to the trustee, for
the benefit of the bondholders, hereunder as long as
any of the said bonds are unpaid.

Fourth: The payment of items one, two and three
are subject to the following: When the borrower
shall have commenced to construct the above men-
tioned new building and shall have prosecuted such
construction and made payments on account thereof
to such an extent that said money remaining in the
hands of the lender shall be sufficient to pay for the
completion of said building, then the lender shall ap-
ply said remaining moneys to the payment of the cost
of constructing said building upon certificates of the
architects in charge of said building, said certificates
to be indorsed by the borrower, or upon the order of
the borrower, and said payments may be made directly
to the contractors, subcontractors or material men as
the building progresses on receipt of waivers of me-
chanics' liens.

The borrower hereby agrees to pay and furnish to the lender waivers of liens, receipts and satisfactory sworn statements showing that the borrower has paid the difference between the cost of the building and the proceeds of the loan before any payments are made on account thereof, and any other sworn statement or statements that the lender may demand.

The making of any advance or any part of an advance shall not be deemed an approval or acceptance by the lender or the trustee in the deed of trust of the work theretofore done, and shall not be construed as a waiver of the rights of the lender to refuse to make any further advances or lender or trustee.

In the event that the architect or borrower, for any reason whatsoever, does not give such certificates or orders above mentioned to the contractors and subcontractors, or if, for any reason, they refuse or fail to complete or, in the opinion of the lender, unreasonably delay the construction of said building, the lender is hereby authorized, at its option, to complete said improvements free of liens, and the amount so expended shall be secured by the trust deed herein referred to. If the building be not completed or be untenanted, the lender or trustee may take possession thereof, employ watchmen to protect the building from depredation or injury, and may preserve and protect the fixtures and property therein; any sums paid or expended in accordance with any of the foregoing provisions of this clause shall be deemed to be advanced to the borrower and shall be secured by said trust deed and at the option of the lender may be deducted from any advance thereafter becoming due.

During the construction of the building, the lender and its architect, inspectors and engineers may from time to time inspect the building, and shall be furnished, if required by them, with copies of all plans, detailed plans, shop drawings and specifications relating to the construction of the building, and they may

examine all plans, detailed plans, shop drawings and specifications which are kept at the work.

Pay any balance remaining in your hands to Mary L. Walker.

Whenever and as often as any of the following events occur, before the amount due the borrower is fully advanced, all obligations on the part of the lender to make or procure any further advances or advancements shall cease, if the lender shall so elect and, if the same shall continue and shall not be remedied within 30 days after notice to the borrower of the default claimed, the said notes or bonds shall become due and payable at the option of the lender, or of the trustee, under said trust deed, anything herein or in said notes or bonds to the contrary notwithstanding (but the lender may make further advances without becoming liable to make any additional advances and without waiving the right to demand immediate payment of the mortgage indebtedness and the enumeration of the following shall not operate as a waiver of any other rights which the lender might otherwise have):

(a) If the plans are not approved by the building department; (b) If copies of the plans and specifications of the building and of any modification thereof be not furnished to the lender whenever the lender shall require the same; (c) If the building is not erected in substantial accordance with the plans and specifications approved and identified by the lender; (d) If the materials used should be defective or of any inferior grade, or if the construction of the building shall not have been carried on in a workmanlike manner; (e) If the borrower does not exhibit to the lender, on demand, and, if requested, furnish copies of all bills of sale, agreements and contracts for the construction of the building or the furnishing of labor or materials therefor; (f) If a survey should show that the build-

ing encroaches to a material degree upon premises other than those described herein, or if the building should be constructed in violation of any valid building line or building restriction; (g) If there should be at any time any note or notice of violation of any law or any municipal rule, regulation or ordinance filed or issued by any municipal or public department or authority against the building or the borrower by reason of any matter in or about the construction of the building; (h) If the building should be materially injured or destroyed by fire or other casualty, and should not be substantially covered by insurance payable to the said trustee; (i) If a petition in bankruptcy should be filed by or against the borrower; (j) If any representations of the borrower herein, or if any subsequent statements of the borrower, should be incorrect in some material matter; (k) If it should appear at any time after payments on the loan have been commenced that the amount of the loan will be insufficient to complete the building; if any mechanic's liens should be filed against said premises, the lender may withhold such sums as in their absolute discretion may be sufficient to cover the amount claimed by the lienors, including all costs, attorneys' fees and expenses the lender may incur.

The lender may pay and charge against said loan, at any time, any overdue principal or interest payments, or any indebtedness incurred by them or the trustee named in the deed of trust, or any sum at any time owing to them or the trustee by reason of the agreement or said trust deed. Balances with the lender shall not draw interest.

It is understood that the above mentioned mortgage guaranty policy, the abstract of title, if any, owned by the borrower, and other title papers, contractors' statements and waivers of lien pertaining to said property shall remain with the lender until all the

indebtedness secured by said trust deed shall have been fully paid. The recitals of fact contained herein shall be understood as made solely by the borrower, and this agreement shall inure to the benefit of and be binding upon the heirs and personal representatives and assigns, grantees or survivors (or the successors) of the borrower and the lender.

The terms and covenants herein contained shall be taken and construed only for the benefit of the parties hereto and their heirs, executors, administrators, personal representatives, survivors, successors, grantees or assigns.

In case the said deductions and disbursements exceed the amount of the loan named, borrower will on demand pay the amount due you, and such amount shall be so much additional money secured by said trust deed.

The authority hereby given to Powell, Garard & Company to disburse the proceeds of said loan is for the purpose of protecting Powell, Garard & Company, as the maker of said loan, and being coupled with an interest, is not subject to revocation by the act of the undersigned or by her death or otherwise.

All taxes and assessments on said land, including the year 1921, are paid. As to my character, financial standing, business integrity, and ability, I hereby refer you to .........

I hereby certify that the following schedule of my assets is a true and correct schedule thereof and that the values therein shown are such as the property would bring at a sale conducted under ordinary circumstances and that the incumbrances thereon are correctly stated and that the net worth therein shown is a true statement of my present financial condition. I own the following real estate: Farm, value, $8,000; three houses, $45,000; 2 apartment buildings, $16,000; one house, $9,000; equities in real property, $78,000.

I own personal property conservatively worth not less than $25,000; net worth $103,000.

There is no judgment standing against borrower in any court of record in the United States, nor any suit pending in any of said courts.

All of the above statements are made by borrower for the purpose of inducing you to make the loan herein applied for. On demand borrower will deposit with you, at the time the trust deed is signed and delivered to you for recording, or at any time thereafter, the amount hereinafter agreed upon as liquidated damages; the fee for recording the mortgage; the cost of lithographing and certifying the bonds, and the estimated cost of policies.

It is understood and agreed that borrower will pay the interest on the full amount of the loan from the day herein agreed upon for the dating of the trust deed thereof. It is understood and agreed that no verbal agreement can in any way change the terms of this application or become binding upon Powell, Garard & Company.

This application to be binding on you only when accepted by indorsement hereon by one of your officers, or by the manager of your real estate loan department, and, after such acceptance, may still be rejected at your option and shall be of no effect, if any statement herein made shall be found to be untrue, or if any of the requirements herein specified are not promptly complied with. This application may be canceled at your option, without further notice, and shall be of no effect, if the loan papers herein provided for have not been properly executed and delivered and satisfactory guarantee policy furnished within 30 days from the date hereof. In case of such rejection or cancellation, borrower will reimburse you for any advances made or expenses incurred by you on account hereof, or in the preparation or the procuring

of circulars or other advertising matter for the purposes of the sale of this loan. In case of borrower's refusal to consummate the loan herein referred to, I will reimburse you for all advances and expenses referred to in this paragraph, and in addition thereto, borrower will pay you $5,000 as liquidated damages.

I reside at 413 Western avenue, Joliet, Illinois, occupation is Joliet Sash & Door Company. Send all notices to 308-14 N. Bluff Street, Joliet, Illinois, Telephone Joliet 2733, 1951-J.

Mary L. Walker.

I hereby certify that I have read this application and am fully advised as to its contents.

Mary L. Walker,
Frank K. Johnson
Mgr. Real Estate Loan Dept.
Approved: C. W. Anderson,
Vice President.

This loan accepted by
Powell, Garard & Company.

Powell, Garard & Company is a corporation organized and existing under the laws of the State of Illinois. The articles of their incorporation provide first: The name of the corporation. The second clause is as follows: "The object for which it is formed is to buy, sell, acquire, take over, own, hold, transfer, lease, pledge, mortgage, encumber, convey, dispose of and deal in federal, state, county and municipal bonds, public service corporation bonds, and stock, industrial bonds and stock, stock and bonds of other corporations, real estate bonds, special assessments, warrants, farm mortgages, real estate loans and other securities as principal and not as agent; and to take, accept, hold on deposit or for safe keeping, any and all bonds, stocks, or other securities, or personal property whatsoever, which any person or corporation may deliver or entrust to it; to invest its capital stock and surplus

earnings in the purchase of income producing prop-
erties to be selected by its director, subject to all con-
ditions and provisions of the Laws of the State of
Illinois, governing corporations. This corporation
shall not exercise any of the functions of 'An agency
and Loan Corporation' as defined in the general cor-
poration act.''

From reading the object for which this company
was incorporated it seems clear to us that Powell, Ga-
rard & Company were not authorized or empowered
to make a loan of money, and it is not seriously con-
tended by any of the defendants in error in this suit
that they are organized for the purpose of loaning
money. The question then arises, ''Was this transac-
tion a loan of money or a sale of credit?''

The instrument that Mary L. Walker signed when
she procured this money is entitled application for
loan, and the word ''borrower'' appears in said appli-
cation 35 times, and the word ''lender'' appears 25
times. It is one of the printed forms of Powell, Ga-
rard & Company and in common use for that com-
pany. In this application Mary L. Walker, through-
out the instrument, is referred to as ''borrower'' and
Powell, Garard & Company is referred to as ''lender.''
As soon as the notes and trust deeds were signed and
delivered, Mary L. Walker was given credit for the
sum of $250,000 less $25,000 bonus, charged by Powell,
Garard & Company, for making the loan. The money
was not paid directly to Mary L. Walker but she re-
ceived the benefit therefrom, by Powell, Garard &
Company, paying to the various contractors the
amount due each as the work progressed and was cer-
tified to, by the architects in charge of the work.

It is seriously insisted by the Chicago Title & Trust
Company ''equity will look through the form, to the
substance of the transaction and give effect to the
intention of the parties.'' They cite the ruling in the

section of 10 R. C. L. on page 380, which is as follows: "In equity the court adapts its relief to the exigencies of the case in hand, and in so doing, form always gives way to substance, or, as the principal is expressed in the shape of an equitable maxim, 'equity looks through forms to substance,' or 'equity regards the substance and not the form of a transaction or proceeding.' The meaning of this maxim is that the rights of the parties are not to be sacrificed to the mere letter, but that the intent or spirit of a contract, agreement or transaction will in equity at least be the paramount consideration. So, in case of written instruments, the form is not always controlling, but courts of equity will seek rather to discover and carry into effect the real intention of the parties and enforce it according to the sense in which it was understood as shown by the subsequent acts and conduct of the parties." This rule has been followed by the Illincis courts in the cases of *Howard v. Burns,* 279 Ill. 256; and *McReynolds v. Stoats,* 288 Ill. 22, and others. However, this rule of law should not be applied, if from an examination of the instrument, it clearly denotes the character of the same. From the examination of the record in this case, we are of the opinion that the transaction between Mary L. Walker and Powell, Garard & Company, in the consummation of this $250,000 transaction, was a loan of money and not a sale of security; and therefore, not authorized by the articles of incorporation of Powell, Garard & Company and was ultra vires.

The facts in this case are undisputed that Powell, Garard & Company charged Mrs. Walker 10 per cent commission for making this loan, in addition to seven per cent interest on the $250,000, together with other small charges and commission. This is in violation of our statutes in regard to usury. Mrs. Walker insists that for this reason the Chicago Title & Trust

Company could not maintain its suit but if the court does hold that it can maintain its suit, the court erroneously allowed Powell, Garard & Company credit on certain bonds to which they were not entitled. On the face of the trust deed securing the loan of the $250,000 is written: "Also that no bona fide innocent holder of any bond or bonds taken before maturity shall be affected as to the benefit of this security by any equities or matters of defense which may exist in favor of any plaintiff in interest against any prior holder of the bond or bonds held by such bondholders." Powell, Garard & Company at the time they sold these bonds to the different purchasers had full authority under its charter to buy and sell securities, etc., and there is no evidence of record by which any purchaser of these bonds could or did know that they were obtained by Powell, Garard & Company in the form of a loan rather than a purchase of securities. It is our opinion that the purchasers of these credits were innocent holders for value in due course. By the terms of the trust deed Mrs. Walker guaranteed that so far as she was concerned there was no defense to the payment of the same. By the provisions of this trust deed Mrs. Walker has waived all equities and matters of defense that may have existed in her favor as to any prior holder of the bonds or bond held by such bondholder. Under the circumstances in this case she is now estopped from setting up the defense of ultra vires or usury against such bona fide holders of these bonds.

In the bill of complaint of the American Radiator Company which was filed March 19, 1924, the Chicago Title & Trust Company as trustee, was made a party defendant in that suit and filed its answer thereto. After considerable discussion back and forth among the parties, on January 13, 1925, a stipulation was entered into between all of the parties to the suit. The

fifth clause of said stipulation is as follows: "That the Chicago Title and Trust Company, trustee, as aforesaid, *is entitled to a lien* upon said demised premises by virtue of a certain trust deed, dated April 2, 1923, executed by Mary L. Walker, a widow, as grantor, and said Chicago Title & Trust Company, which said trust deed was duly acknowledged by said Mary L. Walker on April 2, 1923, and was duly filed for record in the Recorder's Office of Will County, Illinois, on April 14, 1923, and was therein recorded in Book 593, on page 576, as Document No. 353–571; that said trust deed was given to secure an issue of bonds aggregating $250,000; said bonds being dated April 2, 1923, and bearing interest at the rate of seven per cent (7%) per annum, payable semi-annually, on the first day of October and April of each year; that said bonds matured serially from April 1, 1925 to April 1, 1933; as more fully set forth in said trust deed, were duly certified by said Chicago Title & Trust Company, Trustee; and all of said bonds were duly issued and thereafter certified by Chicago Title and Trust Company, and are now outstanding in the hands of the public; no part of the principal of said bonds has been paid; that the interest on said bonds has been paid to October, 1924; that there is now unpaid under the terms of said trust deed, bonds aggregating two hundred fifty thousand dollars ($250,000), plus interest thereon from October 1, 1924 at the rate of seven per cent (7%) per annum.

"It is further stipulated that a decree may be entered herein establishing the above liens and in said decree the defendant, Mary L. Walker, shall be directed to pay the amounts of said mechanics' liens within sixty days of the date of said decree together with legal interest thereon from this date. Upon her failure so to do, the Master in Chancery of this Court shall sell said described premises under said decree,

as provided by statute, and shall bring the proceeds into Court to bide the further order of this Court. The Court by said decree shall expressly reserve for determination after the sale, the question of priorities of liens and distribution of the proceeds of sale and any parties hereto may introduce evidence in connection therewith.

"The Court also reserves for future determination what amount shall be allowed to said Chicago Title & Trust Company, trustee, for its fees, charges and expenses, including solicitor's fees herein, under the terms of said trust deed."

This agreement was signed by Mary L. Walker, individually, and the other parties by their solicitors.

The plaintiff in error now insists that she should not be bound by this stipulation, for at the time she was ignorant of her rights and the defenses that she was entitled to urge against the bond issue. We find no evidence in the record to support this contention. Before the stipulation was signed the matter was discussed fully and Mrs. Walker was represented by her counsel. The record shows that she was a woman who had considerable experience in business matters, especially in building contracts. Our Supreme Court in the case of *People v. Anderson,* 239 Ill. 168, in their opinion say: "Where parties enter into an agreement with reference to the course to be pursued in any particular litigation they will not be afterwards heard to complain that the Court acted on the stipulation, except where as a result of so doing the Court has exercised or attempted to exercise jurisdiction not given by law." *Chicago & N. W. R. Co. v. West Chicago Park Com'rs,* 151 Ill. 204. It is our opinion that when Mrs. Walker signed the stipulation, she became bound thereby. She is estopped from denying that the bonds sold by Powell, Garard & Company to innocent holders for value are valid, or the trust deed

securing the same is a lien on her property for the amount of these bonds.

Powell, Garard & Company prayed an appeal to this court but did not perfect the same and they have not seen fit to file a brief in this court as one of the defendants in error in this case. The order of the court charging them with usury and having voluntarily paid some of the bonds is not disputed and the decree is taken as confessed by them.

In a voluminous record of this kind it is practically impossible to try a case without some error, either in the admission or rejection of evidence. Where so many claimants are involved, it is very difficult to accurately ascertain their rights. The chancellor by his decree found the facts and fixed the rights of the different parties. It is our opinion, and we so hold, that the facts as set forth in the decree in this case are true and correct. Mary L. Walker has been given credit for the usurious amounts charged her by Powell; Garard & Company at the time the loan was made, and she has received all the balance of the $250,000. From a review of the whole case we are of the opinion that substantial justice has been done to all the parties and find no reversible error in the case.

The court in its decree found that the holders of the notes secured by the $75,000 trust deed, commonly termed the second deed of trust, had liens on the property but subordinate to the liens of the holders of the notes or bonds of the first bond issue secured by the first deed of trust. To this finding Avery Brundage and others assigned error in this court and alleged that the court should have held that their lien was prior to the $250,000 bond issue. The American Radiator Company and the American Mosaic & Terrazzo Company filed a plea in release of errors, as against Avery Brundage et al. In their plea they allege that Avery Brundage et al. had accepted the benefits of the decree and are now barred from in-

sisting that the court erred in the adjudication of their rights at the time of the trial. They allege Avery Brundage et al. accepted payment for their attorney fees allowed in the consolidated decree and received rentals by virtue of said decree.

Avery Brundage et al. filed a general and special demurrer to this plea. The grounds of the special demurrer are: That the plea does not allege facts showing a release of cross errors assigned by the demurrants; that the plea is double and multifarious; that the plea relied upon certain matters, as matters of record, which are not matters of record; and that it appears by the record in this case, that the parties thereto filing the plea of release of error joined in error herein, before filing their plea, and they thereby waived their supposed release of error. It is conceded that by filing the demurrer the demurrants admitted the facts well pleaded. The demurrants in this case insist, however, that there are no sufficient facts alleged in the plea that should bar them from insisting on their cross error. The plea positively avers that in the original decree they were allowed attorneys' fees and that the attorneys accepted and receipted for those fees. The plea also alleges that the receiver appointed in the consolidated suits has collected certain rents on the premises and that the demurrants have accepted from said receiver a part of said rents. We think the plea positively and properly sets forth these facts.

In the early case of *Thomas v. Negus,* 2 Gil. (Ill.) 700, the court was considering the question that now is presented to us, and in their opinion say: "The question will, therefore, be considered as if on demurrer to the plea. In our opinion, the plea is valid. The receipt of the money by Duncan, under the circumstances of the case, necessarily operated as a release of errors. By accepting the rents under the decree, he acquiesced in and approved of it. A party

ought not to receive the benefit of a decree, and then complain that it is erroneous. If dissatisfied with it, he should abstain from doing any act, which may change the situation or impair the right of the parties, in the event of its reversal. If the decree is to be reversed, the parties ought to be restored to the position they occupied before it was rendered. Their rights should be reciprocal. Any other rule might be productive of great injustice. The present case furnishes a fit illustration. The pleadings admit the insolvency of the estate of Duncan, and its inability to refund the money. Suppose this writ of error should be retained, and the Court, on the hearing of the cause, should be of the opinion that the rents belonged to Negus & Robbins, or some of the other parties. In such an event, the estate of Duncan would acquire an unjust advantage, and the other parties would be without an adequate remedy to enforce their acknowledged rights.

"This is not like the case of a judgment or decree against a party. He may satisfy it, either voluntarily, or on compulsion, and then reverse it for error. In such case, he is required to do the act or pay the money. Here, the party received the rents voluntarily, and he cannot protect himself by saying, he was required to accept them by the decree of the Court."

The *Thomas* case has been cited and followed by our Supreme Court many times, and in the recent case of *Boylan v. Boylan*, 349 Ill. 471, the court uses this language: "The rule of law was well established that a party to a decree cannot avail himself of those parts of a decree which are beneficial to him and afterward prosecute a writ of error, to reverse the part of the decree which is unfavorable to him." The demurrants in this case insist that because of the consolidated cases they have not waived their rights to accept the rents and attorneys' fees as allowed them by the court. They insist that the decree is and should be regarded

as separable. In this we cannot agree. There is but one decree in the consolidated cases and it seems to us they should not be permitted to accept that part which is favorable to them and reject that which is unfavorable. It is our opinion that the plea of release of error is good and the demurrer to the same is hereby overruled.

This plea and demurrer were filed and were taken under advisement by the court, until the opinion was written. The general rule is that when a demurrer is overruled the demurrant is given leave to file an answer controverting the facts as set forth in the plea. However, in this case the court has passed upon the merits of the assignment of errors of these parties and we have held adversely to these demurrants. Therefore, we see no reason nor good purpose in granting leave to file an answer to this plea. It is our opinion that the decree of the circuit court of Will county should be and is hereby affirmed.

*Affirmed.*